The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

J.M., Juvenile, Respondent–Appellant,

and

Concerning D.A.M., Respondent–Appellant.

No. 99CA0867.

Colorado Court of Appeals, Div. I.

Oct. 26, 2000.

Certiorari Denied April 23, 2001.

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S.2000.

Ken Salazar, Attorney General, H. Michael Steinberg, Special Assistant Attorney General, Denver, CO, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Anne Stockham, Deputy State Public Defender, Denver, CO, for Juvenile–Appellant and Respondent–Appellant.

Opinion by Judge KAPELKE.

J.M., a juvenile, appeals the judgment of the trial court adjudicating him delinquent and finding that he committed acts, which if committed by an adult, would constitute the misdemeanor offenses of criminal mischief and reckless endangerment. D.A.M., J.M.'s father, appeals the trial court's order sentencing him to two days of jail suspended upon the condition that he help J.M. comply with the terms of his probation. We affirm the judgment adjudicating J.M. a juvenile delinquent and vacate D.A.M.'s sentence.

The prosecution's evidence showed the following: J.M. and his cousin were involved in a verbal confrontation with two other teenage boys. As the other two boys drove away in a van, J.M. threw a rock which struck the vehicle and broke a rear window.

## I.

J.M. contends that the trial court erred by admitting hearsay testimony. We disagree.

Hearsay is defined as "a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." CRE 801(c).

Here, a police officer testified that when he responded to the scene of the incident the two boys who had been in the van contacted him and gave their account of what had occurred. Over defendant's objection, the

trial court allowed the officer to testify about the boys' statements for the limited purpose of explaining his subsequent actions. Because this evidence was not admitted to prove the truth of the boys' assertions, it was not hearsay. *See People v. Banks*, 983 P.2d 102 (Colo.App.1999) *aff'd on other grounds*, 9 P.3d 1125 (Colo.2000) (police dispatcher's comments were not hearsay because they were offered to show the state of mind of the officers and to provide a context for their descriptions of their actions).

■ Later in the proceeding, a second officer testified that he had interviewed the two boys and that they had provided consistent statements describing the incident. Defendant did not object to the question that led to the response or request that the officer's response be stricken. We reject the defendant's contention that allowing the officer to characterize the witnesses' statements as "consistent" constituted plain error. There is no indication that the admission of this testimony cast substantial doubt upon the fairness of this bench trial. *See Wilson v. People*, 743 P.2d 415 (Colo.1987). Further, where, as here, trial was to the court, it is presumed that the court disregarded any hearsay evidence in reaching its decision. *See Vanadium Corp. of America v. Wesco Stores Co.*, 135 Colo. 77, 308 P.2d 1011 (1957).

## II.

D.A.M. contends that the trial court lacked statutory authority to sentence him to a suspended jail term. We agree.

At sentencing, a probation officer informed the court that J.M. had missed three appointments for a pre-sentence interview and that one of those non-appearances was the result of D.A.M.'s having failed to make appropriate transportation arrangements. D.A.M. addressed the court and admitted that this had occurred.

After sentencing J.M. to probation, the trial court also imposed a sentence on D.A.M. Although the court said it accepted D.A.M.'s explanation for the missed appointments, the court went on to state: I'm going to sentence you to two days in the [county] jail and suspend that.... I'm going to suspend that

jail sentence on the condition that you assist [J.M.] on probation.... And so by knowing that you've got two days hanging over your head, you won't [lose] focus I hope and you'll do everything you can to help [J.M.] on probation. The trial court thereafter entered this sentence on the written judgment adjudicating J.M. delinquent.

■ Initially, we address, and reject, the People's assertion that D.A.M. is not a party to this appeal and therefore lacks standing to challenge this sentence. The record reflects that D.A.M. was named as a party both in the delinquency petition and in the notice of appeal. *See* § 19–2–514(3)(a), C.R.S.2000 ("The court may, when the court determines that it is in the best interests of the juvenile, join the juvenile's parent ... as a respondent to the action and shall issue a summons requiring the parent ... to appear with the juvenile at all proceedings under this article involving the juvenile"). Further, as the party directly affected by the suspended jail sentence, D.A.M. has standing to challenge that order.

■ We agree with D.A.M.'s contention that a juvenile court does not have statutory authority to sentence a juvenile's parent to jail as part of the juvenile's sentence.

Under § 19–2–919, C.R.S.2000, a juvenile court may, in connection with a juvenile's sentence, require that the parent perform volunteer service, attend parental responsibility training, or pay restitution to the victim of the juvenile's conduct. However, that provision does not authorize a court to sentence a parent to jail. *See People v. Anaya*, 894 P.2d 28 (Colo.App.1994) (courts are limited to imposing sentences authorized by the General Assembly and have no jurisdiction to enter sentences that are inconsistent with their sentencing authority as statutorily defined).

The People contend that the suspended jail sentence ordered in this case is actually a remedial contempt sanction issued pursuant to § 19–2–113(1)(a), C.R.S.2000, which authorizes a juvenile court to hold a parent in contempt "for failure, without good cause, to attend any proceeding concerning the juvenile." We reject this characterization of the juvenile court's order.

The court did not indicate that its sentencing order was predicated upon its remedial contempt powers, and it did not afford D.A.M. the procedural protections to which he would be entitled in such a proceeding. *See* C.R.C.P. 107(6)(initiation of a proceeding for indirect contempt requires issuance of a citation at least 20 days before the hearing, and also requires that the court hear and consider evidence for and against the person charged before imposing a remedial sanction).

We also reject the People's suggestion that the juvenile court's order was authorized by § 19–2–113(1)(b), C.R.S.2000. That provision states: "For any juvenile adjudicated pursuant to this article, the court may specify its expectations for the juvenile's parent . . . so long as the parent . . . is a party to the delinquency proceedings." The scope of this authority and the mechanism for enforcement are set forth in § 19–2–112(2), C.R.S. 2000. That statute provides that if a parent who is a party to the delinquency proceeding "fails to comply with any requirements imposed on the parent in a treatment plan," then such party may be subject to contempt.

■ Thus, while these statutes authorize a juvenile court to hold a parent in contempt for failure to comply with an order relating to a juvenile's treatment plan after proper notice and hearing, they do not permit a court to impose a suspended jail sentence beforehand as a means of preventing such a failure.

The judgment adjudicating J.M. a juvenile delinquent is affirmed. The order sentencing D.A.M. is vacated.

METZGER and JONES, JJ., concur.