The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Kareem Abdul ROBINSON, Defendant–Appellant.

No. 06CA1187.

Colorado Court of Appeals, Div. III.

May 14, 2009.

Rehearing Denied Sept. 24, 2009.

John W. Suthers, Attorney General, Elizabeth Rohrbough, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Rebecca R. Freyre, Deputy State

Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge DAILEY.

Defendant, Kareem Abdul Robinson, appeals the judgments of conviction entered upon jury verdicts finding him guilty of possession with intent to distribute a schedule II controlled substance and conspiracy to distribute a schedule II controlled substance. We affirm.

At trial, the prosecution presented evidence that (1) at the behest of the police, an informant purportedly made contact with two people to arrange to buy $300 worth of cocaine; (2) the transaction was to occur at a certain location; (3) at that location, the informant identified (by saying, "That's them. There they are.") two people approaching in a car as his suppliers; (4) defendant was one of the two people (he was sitting in the front passenger seat of the car); (5) the police stopped the car, arrested defendant and the other person, and searched them and the car; (6) although no drugs were found on defendant, two pieces (2.33 grams) of crack cocaine were found underneath his seat; and (7) $300 would buy two to three grams of crack-cocaine.

The jury found defendant guilty of the above-mentioned offenses. It also found that this was defendant's second occasion possessing more than one gram of a schedule II controlled substance. Based on the jury's verdicts, the trial court sentenced defendant to two concurrent sentences of nineteen years imprisonment in the Department of Corrections.

Although, on appeal, defendant initially raised five contentions for review, in his reply brief he withdrew from consideration one of those contentions. Consequently, we address only defendant's remaining four contentions.

## I. Trial Court's Suppression Ruling

■ Defendant contends that the trial court erred in not suppressing the evidence obtained as a result of his arrest. According to him, the evidence was illegally obtained because the police lacked probable cause to arrest him. We disagree.

The following evidence was elicited at the pertinent suppression hearings.

The informant in this case was not a confidential informant. He had been arrested on an outstanding warrant for drugs and was willing to cooperate with police to "work off" his case.

The informant told the police that, over the past five to six years, a woman with a street name of "Dee" had supplied him with crack cocaine on approximately fifty occasions and that on more than one occasion, he had purchased crack cocaine from Dee's boyfriend, a person who went by the street name "Nephew" and whom the informant had known for about a year. He described the two for the police and associated "Nephew" (later identified as defendant) with a dark colored Cadillac.

The police instructed the informant to set up a purchase of $300 worth of crack cocaine. The informant reported back that he had arranged the transaction, at a certain location, by talking primarily with "Nephew"; although the police did not listen to or record the informant's conversations arranging the transaction, they were present during later calls in which the informant purported to speak with "Nephew."

Upon approaching the meeting place, the informant and an officer saw two people—whom the informant identified as his suppliers—in a tan Buick. After the officer observed that the two people—a woman and defendant—matched the informant's descriptions of his suppliers, other officers were directed to close in and arrest them.

Defendant elicited evidence that the informant had legal problems, that he had not been used before as an informant by the police involved in this case, that his criminal history included giving false information to police, and that, due to his cooperation in the present case, the informant had not been charged in connection with a recent drug bust. Defendant also made an offer of proof that, if called, the informant would testify that he had understood that "Dee" and

"Nephew" had broken up and he had not seen them together in more than a year.

Ultimately, the trial court determined that defendant's arrest was justified because the police had probable cause to believe that the occupants of the car were present at that particular location to sell drugs.

On appeal, we defer to the trial court's findings of historical fact but review de novo the issue of whether the police had probable cause to effect a warrantless arrest. *People v. Matheny*, 46 P.3d 453, 461 (Colo.2002).

■ "Probable cause to arrest exists when, under the totality of the circumstances at the time of arrest, the objective facts and circumstances available to a reasonably cautious officer at the time of arrest justify the belief that (1) an offense has been or is being committed (2) by the person arrested." *People v. Rogers*, 68 P.3d 486, 489 (Colo.App. 2002) (quoting *People v. King*, 16 P.3d 807, 813 (Colo.2001)).

■ Probable cause is measured in terms of "probabilities similar to the factual and practical questions of everyday life upon which reasonable and prudent persons act." *People v. Flowers*, 128 P.3d 285, 287 (Colo. App.2005) (quoting *People v. MacCallum*, 925 P.2d 758, 762 (Colo.1996)). It takes into account a police officer's experience and training in determining the significance of his or her observations, *King*, 16 P.3d at 813, and, because it turns on "common-sense conclusions about human behavior," *People v. Polander*, 41 P.3d 698, 702 (Colo.2001), it may be satisfied even where innocent explanations exist for conduct. *See* 2 W.R. La-Fave, *Search and Seizure* § 3.2(e), at 77–78 (4d ed.2004) (probable cause exists if a "succession of superficially innocent events had proceeded to the point where a prudent man could say to himself that an innocent course of conduct was substantially less likely than a criminal one").

■ In cases where police act upon information supplied by an informant, a court should consider the informant's reliability, veracity, and basis for knowledge, as well as the corroboration by independent police work of information supplied by the informant.

*People v. Diaz*, 793 P.2d 1181, 1183 (Colo. 1990).

Here, defendant asserts that the trial court erred in its probable cause assessment because it failed to properly consider the informant's unreliability, conflicting evidence about the informant's basis of knowledge, and facts showing the absence of corroboration by the police.

With respect to the informant's unreliability, defendant points to the informant's lack of a track record as an informant, to his providing police with a false name on a prior occasion, and to his being on probation in one drug case and wanted in connection with another one. However, as the trial court noted, the informant's legal problems also "gave him an incentive to ... cooperate." *See United States v. Miller*, 925 F.2d 695, 699 (4th Cir.1991) (an "informant's interest in obtaining leniency create[s] a strong motive to supply accurate information"); *see also United States v. Soriano*, 361 F.3d 494, 505 (9th Cir.2004) (an informant "could not achieve that goal if he gave false information, so the circumstances in which he provided the information further served to corroborate its reliability").

Additionally, as the trial court also noted, the fact that the informant got in the car and traveled with a police officer to the location where the drug transaction was to occur "suggests grounds for believing [the informant's] statement":

[The officer] overhears one side of these conversations ... and then [the informant is] willing to get in the car with [the officer] to go to the scene where the transaction is going to happen where he's going to say, okay ... [t]his is the guy, and ... for a guy to send the West Metro Drug Task Force on a wild goose chase ... and all the time just be leading them on and jacking them around with the defendant when he has no suspicion whatever that the defendant had drugs would, I think, if anything, really tend to place him in further jeopardy and tend to irritate, annoy, and alarm any [police] that were put out and put to the time and service of going forward on this ... buy .....

... [S]uch a wild-goose chase with no real intent on the part of [the informant] to represent and reflect the truth ... would have quickly resulted in somebody being notified of what he's up to doing and ... would not have caused anybody to look fondly upon his service as a confidential informant.... [H]e had something to lose if it all turned out to be folly and false. And probably on balance, he had a lot more to lose if he was just leading them on a wild goose chase and wasn't being truthful about this, than what ... he did gain, if anything, on this.

With respect to the informant's basis of knowledge, defendant directs our attention to two conflicts in the evidence. The first is that, while the informant initially told the officer that he had known "Nephew" for approximately a year and that "Nephew" and "Dee" had sold drugs together, he subsequently told co-defendant's counsel that he knew "Dee" and "Nephew" had broken up and that he had not seen them together for more than a year before the drug transaction here. While the conflict draws into question which version of facts was correct, the probable cause assessment must be based on the information that was available to the officer at the time of the arrest. *People v. Couillard*, 131 P.3d 1146, 1149 (Colo.App.2005). And the information upon which the officer acted here was sufficiently detailed to indicate the informant had a basis for knowing who "Nephew" (defendant) was and why he would appear on the scene (for the purpose of selling drugs).

With respect to the issue of police corroboration, we find it significant that the individuals identified by the informant upon arriving at the scene were found to match the earlier descriptions given by the informant. We reject, as insignificant, that the alleged drug suppliers arrived not in the car the informant associated with "Nephew" (defendant), but in another car, one not mentioned or described by the informant and driven by and belonging to "Dee."

Under the totality of the circumstances, we, like the trial court, conclude that probable cause existed to support defendant's arrest and that, consequently, the evidence

seized at the scene was admissible at trial. *See United States v. Reivich*, 793 F.2d 957, 959–60 (8th Cir.1986) ("Granted that [the informants] might not have qualified for an AAA rating on a Dun & Bradstreet credibility scale, not having been shown to be Certified Public Informants, their motivation to speak the truth (it being a reasonably safe assumption that self-preservation ranks higher than honor in a drug dealer's hierarchy of values) and their information concerning [the defendant] were sufficient to support a finding of probable cause.").

## II. Confrontation Rights

■ Defendant also contends that by admitting out-of-court statements made by the informant to the police, the trial court violated his right under the United States and Colorado Constitutions to confront adverse witnesses. We disagree.

The prosecution planned to have the informant testify at trial. However, on the morning of trial, the informant could not be found. The prosecutor told the court, "[I]n the unlikely event that [the informant] is arrested sometime today we'll call him [as a witness], but I don't anticipate that." Defense counsel conceded, and the prosecutor agreed, that the informant was unavailable to testify.

Because the informant was not present to testify, defendant moved to exclude from evidence the informant's out-of-court statements under *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), because he (defendant) had not had, and would not have, the opportunity to confront and cross-examine the informant about those statements. In response, the prosecution argued that defendant's confrontation rights would be implicated only by the admission of hearsay statements, that is, statements offered for the truth of the matter asserted, and that here, the informant's statements were not offered for that purpose.

The trial court agreed with the prosecution, finding:

I don't think that it would be hearsay if [the prosecutor] tailors the evidence to be why did the police do what they did. In that case, it's clearly not hearsay because

it's not offered for the truth of the matter asserted. It's offered for why the police took the next step, why did they pull over this car, why did they contact these people. Certainly, this didn't happen in a void, and [the prosecutor] is allowed some latitude....

....

[To the prosecutor]: I don't feel you can bring in much. I think you can bring in some foundational information to show why the police did what they did, and I think that's a pretty long standing rule that I'm going to apply in this matter.

Subsequently, a detective testified that (1) he and the informant had engaged in multiple conversations about what the informant could do for the task force; (2) the informant had identified two individuals as his drug source, including "a black male known by the street name of Nephew who was in his late 20's, six foot, heavier set," and "a Hispanic female, short, in her early 20's known by the name of Dee"; (3) he (the detective) instructed the informant to call the couple to arrange the deal; (4) on the day the deal was to occur, the informant made and received calls on his cell phone, including a call with information pertaining to the specific location of the deal; (5) the detective was with the informant during some of these conversations; and (6) when the informant and the detective arrived at the designated location, the informant said, "That's them. There they are." Another detective testified that, when they arrived at the location, the informant told him "the two subjects in that tan vehicle were the people that he was supposed to buy the drugs from."

■ The admission of hearsay evidence implicates a defendant's confrontation rights under the federal and state constitutions. *See Davis v. Washington,* 547 U.S. 813, 823, 126 S.Ct. 2266, 2274, 165 L.Ed.2d 224 (2006) (admission of "testimonial" hearsay violates federal confrontation rights); *Compan v. People,* 121 P.3d 876, 882–86 (Colo.2005) (admission of nontestimonial hearsay as violative of state confrontation rights).

■ However, the admission of nonhearsay does not implicate a defendant's confron-

tation rights. *Crawford,* 541 U.S. at 59 n. 9, 124 S.Ct. at 1369 ("The [Confrontation] Clause . . . does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted."); *People v. Isom,* 140 P.3d 100, 103 (Colo.App. 2005) (no right of confrontation or hearsay preclusion exists when statements are not offered for their truth); *People v. Bornman,* 953 P.2d 952, 956 (Colo.App.1997) (because the information was not hearsay, "no issue of confrontation is presented").

■ Hearsay is defined as "a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." CRE 801(c); *see People v. Huckleberry,* 768 P.2d 1235, 1241 (Colo.1989). An out-of-court statement offered, not for the truth of the matter it asserts, but solely to show its effect on the listener, is not hearsay. *People v. Rodriguez,* 888 P.2d 278, 287 (Colo. App.1994).

■ Trial courts have considerable discretion in determining the admissibility of evidence, and their evidentiary determinations will not be disturbed on appeal absent an abuse of discretion. *People v. Boykins,* 140 P.3d 87, 95 (Colo.App.2005).

In *People v. Tenorio,* 197 Colo. 137, 590 P.2d 952 (1979), police testified on direct examination that they went to a park after receiving a radio call describing an incident involving a man of the defendant's description. On cross-examination, one officer acknowledged that he had approached the defendant with his gun drawn. When, on redirect, the prosecution asked the officer why he had approached the defendant with his gun drawn, the officer answered, "Because the individual was purported to have a weapon." *Id.* at 145, 590 P.2d at 958.

The supreme court rejected the defendant's assertion that the officer's recitation of the substance of the dispatch statements was hearsay, finding:

None of the above statements by the officers were [sic] inadmissible hearsay. They were elicited only to establish the officers' reasons for initially going to the park and for drawing their guns after arrival there.

The statements were not offered to show the truth of the contents of the radio report or to establish that the defendant did in fact possess a weapon.

*Id.*

Similarly, in *People v. Banks,* 983 P.2d 102 (Colo.App.1999), *aff'd,* 9 P.3d 1125 (Colo. 2000), a division of this court rejected a defendant's assertion that the trial court erred in allowing officers to relate a dispatcher's out-of-court statements to the effect that they should "use caution" in approaching the defendant because he was "dangerous":

> [C]ontrary to defendant's assertion, the trial court properly concluded that the officers' testimony was not hearsay evidence. It was not offered to show the truth of the dispatcher's comments, but to show the state of mind of the officers and to provide a context for their descriptions of how they approached defendant and why they interacted with him as they did.

*Banks,* 983 P.2d at 105; *see People v. J.M.,* 22 P.3d 545, 547 (Colo.App.2000) (officer's testimony about victims' statements was not hearsay because it was admitted to explain the officer's subsequent actions); *see also United States v. Freeman,* 816 F.2d 558, 563 (10th Cir.1987) ("[O]ut of court statements are not hearsay when offered for the limited purpose of explaining why a Government investigation was undertaken."); *United States v. Mancillas,* 580 F.2d 1301, 1309 (7th Cir. 1978) ("Whether or not the ... statement was true, the fact that it was made would surely explain the flurry of investigative activity ... the jury was soon to hear about. For this purpose, outlining the background of the investigation, with the evidence not being offered to prove its truth, it could be said not to be nonadmissible as hearsay." (citations omitted) ).

Here, we agree with the trial court that the informant's statements—referencing the drug transaction arrangements, purportedly describing the two suppliers and giving their street names, and identifying them upon arriving at the scene—were all introduced for the nonhearsay purpose of showing their effect on the listening officers, that is, to show why they chose to go to that particular location and stop, arrest, and search defendant and the car in which he was traveling.

Defendant's attempt to distinguish the present case from *Tenorio* based on the substance of the officer's recitation here is unavailing. It is the purpose for which statements are offered, and not the details reflected therein, that determines whether the statements are hearsay. From our review of the record, we discern no indication that at the time the prosecutor elicited evidence of the informant's statements, he was doing so to prove the truth of the matter asserted therein.

We recognize the danger that a jury might well misuse evidence offered to explain the background for an investigation or police actions, particularly when the substance of the statements goes precisely to the issue that the government is required to prove. In our view, however, this risk presents an issue not of hearsay, but of "legal" relevance under CRE 403, that is, whether the evidence, though relevant, would engender confusion and undue prejudice:

> [When] a law enforcement official explains his going to the scene of the crime by stating that he received a radio call to proceed to a given location or ... explain[s] why an investigation was undertaken or other subsequent action, such testimony is not hearsay. However if he becomes more specific by repeating definite complaints of a particular crime by the accused, this is so likely to be misused by the jury as evidence of the fact asserted that the content of the statement should, absent special circumstances enhancing probative value, be excluded on the grounds that the probative value of the statement admitted for a non-hearsay purpose is substantially outweighed by the danger of unfair prejudice, Rule 403.

3 Michael H. Graham, *Handbook of Federal Evidence* § 801:5 (6th ed.2006) (footnotes omitted); *see also Freeman,* 816 F.2d at 563; *Ryan v. Miller,* 303 F.3d 231, 252–53 (2d Cir.2002) ("Testimony containing hearsay may be admissible not for its truth but as background information if (1) 'the non-hearsay purpose by which the evidence is sought to be justified is relevant,' and (2) 'the proba-

tive value of this evidence for its non-hearsay purpose is [not] outweighed by the danger of unfair prejudice resulting from the impermissible hearsay use of the declarant's statement.") (quoting *United States v. Reyes,* 18 F.3d 65, 70 (2d Cir.1994)); *United States v. Evans,* 216 F.3d 80, 87 (D.C.Cir.2000) ("The government correctly notes that when the 'background' being offered is the state of mind of the police, it is technically not hearsay at all. Nonetheless, to be admissible it must still be relevant, and if 'background' was related to a fact 'of consequence to the determination' of this case, it was only barely so.... At this point we must consider the role of Rule 403 ...." (citations omitted) ); *United States v. Becker,* 230 F.3d 1224, 1237 (10th Cir.2000) (Baldock, J., concurring) ("The conclusion that the statements were offered to explain the reason for the investigation, rather than hearsay statements offered to prove the matter asserted, does not end our inquiry. Such statements must be evaluated for relevance under Fed.R.Evid. 401 and for undue prejudice under Fed. R.Evid. 403." (citations omitted) ); *United States v. Lovelace,* 123 F.3d 650, 653 (7th Cir.1997) ("Such a facially benign purpose [i.e., to explain police actions] ... does not guarantee admittance: we inquire as to the [informant's] tip's relevance and as to its prejudicial effect.").

But here, defendant did not argue CRE 403 as a basis for excluding the evidence in the trial court, and consequently, the trial court had no reason to explore the relative probative value and prejudice of the informant's statements in explaining the actions of the police.

In addition, defendant could have—but did not—request an appropriate limiting instruction. *See* CRE 105 ("When evidence which is admissible ... for one purpose but not admissible ... for another purpose is admitted, the court, *upon request,* shall restrict the evidence to its proper scope and instruct the jury accordingly." (emphasis added) ). And the trial court's failure to provide a limiting instruction sua sponte is not reversible error. *See People v. Crespi,* 155 P.3d 570, 576 (Colo. App.2006) ("A trial court's failure to give a limiting instruction, sua sponte, does not constitute plain error."); *People v. Pennese,* 830 P.2d 1085, 1089 (Colo.App.1991) ("[T]he failure of the court to give a limiting instruction, absent a defense request, is not reversible error.").

On appeal, defendant neither argues CRE 403 as a basis for excluding the evidence on appeal nor asserts that admission of the informant's statements was plain error. Defendant argues that the prosecution evidenced its intent not to limit the use of the informant's statements to a nonhearsay purpose in both opening statements and closing arguments. From our review of the record, we perceive no improper use of the evidence during opening statements. And while, in closing, the prosecution may have made a hearsay reference to the evidence, defendant made no objection to the prosecution's comments, and we fail to perceive how, under these circumstances, a proper ruling admitting statements for a nonhearsay purpose may be rendered erroneous by their subsequent misuse.

We therefore evaluate the propriety of the trial court's ruling in light of the circumstances present when the evidence was offered. Because defendant does not raise the prosecution's alleged misconduct during opening statements and closing arguments as separate grounds for reversal, we decline to address that alleged misconduct.

In sum, we conclude that the trial court acted within its discretion in admitting the officer's references to the informant's out-of-court statements as nonhearsay. *See, e.g., United States v. Wilson,* 107 F.3d 774, 780–83 (10th Cir.1997) (in recounting tip about drugs being sold from particular residence, which led to subsequent investigation, officer did not relate hearsay); *Freeman,* 816 F.2d at 563–64 (officer testified that informant told him defendant was passing counterfeit money). Accordingly, we discern no confrontation error.

In so concluding, we necessarily reject defendant's reliance on *United States v. Hearn,* 500 F.3d 479, 483–84 (6th Cir.2007); *United States v. Maher,* 454 F.3d 13, 22–23 (1st Cir.2006); *United States v. Cromer,* 389 F.3d 662, 676–78 (6th Cir.2004); and *United States v. Silva,* 380 F.3d 1018, 1020 (7th

Cir.2004). In each of those cases, the court looked to the prosecution's actual, or the jury's likely, misuse of informant information, to determine whether the admission of that evidence violated *Crawford.* The courts did not, as we do here, recognize that (1) there is a difference between hearsay evidence and evidence which, despite having a legitimate nonhearsay purpose, might nonetheless be objectionable on grounds of undue prejudice; and (2) there are measures a defendant can take to protect himself or herself from the latter type of evidence, namely, objecting to its admissibility on CRE 403 grounds, or, if that fails, obtaining an appropriate limiting instruction.

For these reasons, we conclude reversal is not warranted on this ground.

### III. Sufficiency of the Evidence

We reject defendant's contention that the prosecution presented insufficient evidence to support his convictions for possession with intent to distribute a schedule II controlled substance and conspiracy to distribute a schedule II controlled substance.

When examining the sufficiency of the evidence, we determine whether the evidence, viewed as a whole and in the light most favorable to the prosecution, is sufficient to support a conclusion by a reasonable person that the defendant is guilty of the crime charged beyond a reasonable doubt. *People v. Grant,* 174 P.3d 798, 812 (Colo.App.2007); *see also People v. Sprouse,* 983 P.2d 771, 777 (Colo.1999).

In assessing the sufficiency of the evidence, we recognize that (1) a defendant's mental state may be inferred from his or her conduct and other evidence, including the circumstances surrounding the commission of the crime; (2) the prosecution, rather than the defendant, must be given the benefit of every reasonable inference that can be drawn from the evidence; and (3) where reasonable minds could differ, the evidence is sufficient to sustain a conviction. *See Grant,* 174 P.3d at 812.

### A. Possession with Intent to Distribute Schedule II Narcotic

Defendant asserts that the prosecution failed to prove that he "knowingly" possessed the cocaine because there was no evidence, beyond his status as a passenger in the vehicle, linking him to that cocaine. We are not persuaded.

To sustain a conviction for possession of a controlled substance, the prosecution must prove both that "the defendant had knowledge that he was in possession of a narcotic drug and that he knowingly intended to possess the drug." *People v. Baca,* 109 P.3d 1005, 1007 (Colo.App.2004) (quoting *People v. Stark,* 691 P.2d 334, 339 (Colo. 1984)).

A conviction for possession of a narcotic drug may be predicated upon circumstantial evidence. *Stark,* 691 P.2d at 339. The drug need not be found on the person of the defendant, as long as it is found in a place under his or her dominion and control. *Id.* However, where a person is not in exclusive possession of the premises in which drugs are found, such an inference may not be drawn unless there are statements or other circumstances "tending to buttress the inference of possession." *People v. Atencio,* 140 P.3d 73, 75 (Colo.App. 2005); *see also Stark,* 691 P.2d at 339.

Here, the jury could properly infer that defendant knew the drugs were in the car and that he intended to possess them. Although we agree with defendant that his mere presence in the vehicle alone would be insufficient to sustain his conviction, *see Feltes v. People,* 178 Colo. 409, 416–17, 498 P.2d 1128, 1132 (1972), additional evidence at trial showed that (1) the police had instructed the informant to arrange a meeting with two other people to purchase $300 of cocaine; (2) defendant was one of two people present in a car at the time and place arranged for the drug deal; and (3) $300 worth of cocaine was found under defendant's seat.

From this evidence, the jury could reasonably infer that defendant's presence at the scene was not accidental, but for the purpose of selling the drugs he knew were in the car. Consequently, the evidence was sufficient to

sustain his conviction for possessing a schedule II controlled substance with intent to distribute it.

### B. Conspiracy

Defendant also contends that there was no evidence of an agreement or overt act necessary to sustain a conspiracy conviction. We disagree.

"The crime of conspiracy is the illegal agreement to commit a crime coupled with at least one overt act in furtherance of that agreement." *People v. Phong Le*, 74 P.3d 431, 435–36 (Colo.App.2003); *see also* § 18–2–201, C.R.S.2008. Because of the "covert and secretive nature of the offense," most evidence supporting a conspiracy will be circumstantial. *See Flowers*, 128 P.3d at 288 (quoting *People v. LeFebre*, 190 Colo. 307, 310, 546 P.2d 952, 954 (1976)); *see also People v. Shannon*, 189 Colo. 287, 290, 539 P.2d 480, 482 (1975) ("Conspiracies by their very nature are often covert and surreptitious in nature, and for that reason, conspiracies may be established by circumstantial evidence alone.").

The existence of a conspiracy may be proved by "circumstantial evidence which indicates that the conspirators, by their acts, pursue th[e] same objective, with a view toward obtaining a common goal." *Flowers*, 128 P.3d at 288 (quoting *People v. Cabus*, 626 P.2d 1159, 1160 (Colo.App.1980)).

Here, the evidence at trial showed that (1) the police instructed the informant to conduct a drug transaction with two people; and (2) defendant and Dee arrived together at the location identified by the informant with an amount of cocaine consistent with the amount of money the informant was instructed by the police to offer them. There were also scales found in the vehicle. From this evidence, a reasonable trier of fact could infer both an agreement between defendant and Dee to sell cocaine and at least one overt act (i.e., traveling to the location) in furtherance of that agreement.

The evidence was sufficient to sustain defendant's conspiracy conviction.

### IV. Postconviction Motion

We decline to address defendant's final contention that the trial court did not

have jurisdiction to rule on his motion for postconviction relief.

Defendant was sentenced on April 27, 2006, and filed his notice of appeal in this case on June 12, 2006. On February 2, 2007, while this appeal was pending, defendant filed in the trial court a Crim. P. 35(a) motion alleging his sentence was illegal under section 18–1–410(1)(a), C.R.S.2008, and on February 7, 2007, the trial court denied that motion. Defendant did not amend his notice of appeal, nor did he file a separate notice of appeal from the trial court's order.

While we agree with defendant that a trial court generally lacks jurisdiction to issue further orders in a case once an appeal has been perfected, *see People v. Rosales*, 134 P.3d 429, 432 (Colo.App.2005); *People v. Rivera–Bottzeck*, 119 P.3d 546, 551 (Colo.App.2004), because defendant did not file a notice of appeal from the trial court's February 7, 2007, order, we are without jurisdiction to review that order. *See Peterson v. People*, 113 P.3d 706, 709 (Colo.2005) (filing a timely notice of appeal in the appellate court is a jurisdictional prerequisite to appellate review).

The judgments of conviction are affirmed.

Judge LOEB and Judge MILLER concur.