The PEOPLE of the State of Colorado,
Plaintiff–Appellant

v.

Christina Maria CASTANEDA,
Defendant–Appellee.

No. 10SA255.

Supreme Court of Colorado,
En Banc.

Feb. 7, 2011.

⚎63.4(2)

Accordingly, we reverse the suppression order.

———

## I.

Don Quick, District Attorney, Seventeenth Judicial District, Michael J. Milne, Senior Deputy District Attorney, Brighton, Colorado, Attorneys for Plaintiff–Appellant.

William P. Buckley, The Law Firm of Leonard M. Chesler, P.C., Denver, Colorado, Attorneys for Defendant–Appellee.

Justice HOBBS delivered the Opinion of the Court.

In this interlocutory appeal, the prosecution challenges the trial court's suppression of evidence obtained as a result of the arrest of the defendant, Christina Maria Castaneda. The police found Castaneda by the side of Interstate 25 with a vehicle that matched the description given by a person whose vehicle had been hit by a driver who had fled the scene of the accident.

Castaneda told the police that the vehicle belonged to her mother, Castaneda was a passenger in the car, and a six-foot tall woman named "Jowanna" had been driving. At the suppression hearing, the prosecution established the following facts, among others. The black sedan owned by Castaneda's mother was involved in a collision on Interstate 76. When the police located the vehicle, Castaneda was the only woman with the sedan. The arresting officer observed that Castaneda had alcohol on her breath and had the driver's seat of the sedan pulled too far forward to accommodate the six-foot tall woman Castaneda claimed had been driving.

The trial court ruled that the police did not have probable cause to arrest Castaneda because the facts did not support a conclusion that she had been driving the vehicle. We disagree. We hold that the totality of the circumstances support probable cause for the arrest of Castaneda as the driver in this case.

In the early morning hours of July 23, 2009, Colorado State Trooper Jeremy Hostetter responded to a reported hit-and-run accident on Interstate 76. Hostetter contacted the driver who had been hit, Randal Brossart, inside his Jeep on the side of Interstate 25 near 50th Avenue in Denver. Hostetter observed damage to the driver's side. Brossart told Hostetter that a black, four-door sedan had collided with him on Interstate 76 and that he had followed the black car, but eventually pulled over. Brossart provided the license plate number of the black sedan as "655SWW" but was unable to describe any details about the driver or whether there was more than one person in the car.

Trooper Hostetter then responded to a report that Denver police officers had contacted a black sedan on the side of Interstate 25 near 38th Avenue. When he arrived, Hostetter saw a black sedan on the side of the road and determined from its license plate that it was the car reportedly in the accident with Brossart's Jeep. The black sedan had minor damage to its passenger side. Hostetter observed a woman outside the vehicle and a man walking around the scene.

Trooper Hostetter asked the woman, who identified herself as Christina Castaneda, if the black sedan was her vehicle and she replied that it was her mother's. When asked if she had been involved in an accident, Castaneda replied that she did not remember and denied she had been driving the vehicle. Castaneda reported that a woman named "Jowanna" had been driving and she did not know Jowanna's last name. Castaneda claimed Jowanna was about six feet tall and had walked away from the scene after stopping the car. Trooper Hostetter looked into the car and noticed that the driver's seat was

moved too far forward to accommodate a six-foot tall person. Hostetter is six feet tall.

Hostetter also talked to the man who was at the scene. He identified himself as Kenneth Chavez. Chavez told Hostetter that Castaneda flagged him down and asked for help to change a flat tire. Chavez did not know Castaneda and reported that he had not seen anyone else near the car besides Castaneda. Chavez said that Castaneda told him she had called her mother for help to get herself and the car home.

While speaking with Castaneda, Trooper Hostetter observed the strong odor of alcohol on her breath and asked Castaneda if she was willing to perform voluntary roadside maneuvers. Castaneda refused to perform the maneuvers, responding, "No. I don't know why I need to do that. I wasn't driving the vehicle." Hostetter then placed Castaneda under arrest, handcuffing her and putting her in his patrol vehicle. Trooper Hostetter inventoried the vehicle, and in the course of his inventory, discovered a black backpack. Castaneda asked Hostetter if he could get her purse, which he found inside the backpack. As Hostetter pulled the backpack out, money fell out and when he looked through her purse to make sure there were no weapons inside, he discovered two white bags with a white rock-like texture. Castaneda testified that although she asked for her purse, she never consented to have her purse searched.

The prosecution charged Castaneda with possession of more than a gram of a schedule II controlled substance,[1] a class four felony; possession of drug paraphernalia,[2] a class two petty offense; leaving the scene of an accident,[3] a class two traffic misdemeanor; failure to report an accident or return to the scene,[4] a class two traffic misdemeanor; driving under the influence,[5] a class one traffic misdemeanor; failure to provide proof of insurance,[6] a class one traffic misdemeanor; and careless driving,[7] a class two traffic misdemeanor.

Castaneda pled not guilty and filed a motion to suppress and/or dismiss, claiming that since no witness saw her driving the car allegedly involved in the hit-and-run incident, the officer lacked probable cause to arrest her. Castaneda attached affidavits to the motion from two persons claiming that they saw Castaneda in the rear seat of her car and another woman driving when Castaneda left the MGM bar on July 23, 2009 at 1:30 a.m.

At the suppression hearing, the trial court determined that, although there was reasonable suspicion for Hostetter's initial contact with Castaneda, there was not probable cause for an arrest. The trial court recited the standard for finding probable cause and concluded that, while there was probable cause that an offense had been committed, there was not probable cause that Castaneda had committed that offense. The trial court found that the only evidence linking Castaneda to driving was the position of the driver's seat, indicating a person six feet tall could not have driven the car. The trial court found that more credibility could be given to Castaneda's assertion that she had not been driving the car because of the lapse of time between when Castaneda left the bar—1:30 a.m.—and the time when the accident was reported—approximately 2:53 a.m. On this basis, the trial court could not "find under the totality of the circumstances" that there

1. § 18–18–405(1), (2)(a)(I)(A), C.R.S. (2010).

2. § 18–18–428, C.R.S. (2010).

3. § 42–4–1602, C.R.S. (2010).

4. § 42–4–1606(1), C.R.S. (2010).

5. § 42–4–1301(1)(a), C.R.S. (2010).

6. § 42–4–1409(3), C.R.S. (2010).

7. § 42–4–1402, C.R.S. (2010).

was probable cause to legally arrest Castaneda. The trial court suppressed the results of the search as the fruits of an illegal arrest.

## II.

We hold that the totality of the circumstances support probable cause for the arrest of Castaneda as the driver in this case.

## A.

### Probable Cause

#### 1. Standard of Review and Applicable Law

██ We review a suppression order with deference to the trial court's findings of historical fact and do not disturb those findings if they are supported by competent evidence in the record. *People v. McClain,* 149 P.3d 787, 789 (Colo.2007). However, we review de novo the trial court's application of the law. *People v. Syrie,* 101 P.3d 219, 222 (Colo. 2004).

██ A warrantless arrest is only valid if supported by probable cause, with the burden of proof on the prosecution to establish probable cause. *People v. Washington,* 865 P.2d 145, 147 (Colo.1994). Both the United States Constitution and the Colorado Constitution prohibit unreasonable searches and seizures. U.S. Const. amends. IV, XIV; Colo. Const. art. II, § 7. Thus, evidence seized as the result of a warrantless arrest is only admissible at trial if probable cause supported the arrest. *People v. Robinson,* 226 P.3d 1145, 1150 (Colo.App.2009).

██ Whether probable cause was adequate at the time of the warrantless arrest is a question of law evaluated by considering the totality of the circumstances at the time of the arrest. *Id.* at 1149. Probable cause exists when "the objective facts and circumstances available to a reasonably cautious officer at the time of arrest justify the belief that (1) an offense has been or is being committed (2) by the person arrested." *Id.* at 1149 (citations omitted).

██ A probable cause analysis necessarily turns on common-sense conclusions about human behavior and probabilities evaluated by experience with the facts and practices of everyday life. *Id.* Moreover, probable cause may exist even where innocent explanations are offered for conduct. *Id.* The fact that innocent explanations may be imagined does not defeat a probable cause showing. *Id.* Instead, the police are entitled to draw appropriate inferences from circumstantial evidence, even though such evidence might also support other inferences. *People v. Schall,* 59 P.3d 848, 852 (Colo.2002) (citations omitted).

#### 2. Application to this Case

██ Castaneda argues that although Trooper Hostetter had reasonable suspicion to make an investigative stop, he did not have probable cause to arrest her. We disagree.

First, there is evidence that Castaneda's mother's black sedan was the one involved in the collision with Brossart. Hostetter found Castaneda with the damaged black sedan on the side of Interstate 25 just a few miles south of the place of his interview with Brossart. The license plate Brossart reported matched the license plate on Castaneda's mother's vehicle. Thus, the first prong of probable cause, that an offense had been committed, was clearly established by Brossart's report and Hostetter's identification of the black sedan.

Only the second prong—the identity of the person to be arrested—is contested in this case. Despite Castaneda's statements to the contrary, Trooper Hostetter had ample circumstantial evidence available to him at the time of the arrest to make a reasonable inference that Castaneda had driven the black sedan and left the scene of the collision. Most significantly, Castaneda was the only person at the scene linked to the black sedan. Hostetter confirmed through another witness, Chavez, that Castaneda had been the only person present when he arrived at the scene to help.

In addition to Castaneda's solitary presence with the sedan on the side of a busy interstate, Trooper Hostetter observed that the driver's seat of the black sedan was too far forward to accommodate a six-foot tall person. The position of the seat contradict-

ed Castaneda's assertion that a six-foot tall woman named "Jowanna" had driven the car and walked away after stopping on the shoulder of Interstate 25. Finally, as Hostetter continued to talk with Castaneda, he noted the strong odor of alcohol on her breath, allowing him to reasonably infer that Castaneda could have been driving carelessly and attempted to escape, conscious of her liability if she were to be found intoxicated at the scene of an accident.

■ Castaneda argues that the above facts should be construed in her favor. For example, Castaneda points to evidence that she was on the side of the road and reportedly called her mother for help getting home—rather than driving herself—for the proposition that she also did not drive the sedan away from the bar.[8] Although the burden of establishing probable cause to oppose a motion to suppress rests with the prosecution, we need not view every inference in a light favorable to the defendant. *Schall,* 59 P.3d at 852 (police entitled to draw appropriate inferences from circumstantial evidence); *Washington,* 865 P.2d at 147. Instead, the totality of the circumstances analysis requires that we consider "whether the facts available to a reasonably cautious officer at the moment of arrest warranted the belief that an offense had been or was being committed by the person arrested." *People v. Diaz,* 793 P.2d 1181, 1183 (Colo.1990).

In this case, based on the totality of the circumstances, Trooper Hostetter reasonably concluded that Castaneda had been the driver of the black sedan. The facts known to the officer included matching license plates, alcohol on Castaneda's breath, and the driver's seat pulled too far forward for a six-foot tall person. The circumstances at the time included Castaneda's presence as the only person linked to the sedan on the shoulder of Interstate 25. These facts and circumstances were more than enough to establish probable cause for Castaneda's legal arrest. *Washington,* 865 P.2d at 147. The evidence

seized as a result of Castaneda's arrest is admissible at trial. *Robinson,* 226 P.3d at 1150.

### III.

Accordingly, we reverse the trial court's suppression order and remand this case for further proceedings consistent with this opinion.

---

8. Castaneda supports this argument with the sworn statements of Yolanda Robago and Michelle Mendez, both friends of Castaneda who gave statements that they saw Castaneda leave the MGM bar riding in the back passenger side of her black sedan, with an unidentified woman driving, and an unidentified man in the front passenger side. Because these statements were not available to the arresting officer, we do not consider them in our totality of the circumstances analysis of the probable cause determination he made prior to making the arrest.