22CA1028 Peo in Interest of TB 09-05-2024 COLORADO COURT OF APPEALS Court of Appeals No. 22CA1028 Weld County District Court No. 21JD42 Honorable Marcelo A. Kopcow, Judge The People of the State of Colorado, Petitioner-Appellee, In the Interest of T.B., Juvenile-Appellant. JUDGMENT REVERSED AND CASE REMANDED WITH DIRECTIONS Division V Opinion by JUDGE LUM Brown and Berger*, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced September 5, 2024 Philip J. Weiser, Attorney General, Josiah Beamish, Assistant Attorney General, Denver, Colorado, for Petitioner-Appellee Megan A. Ring, Colorado State Public Defender, John P. Finnegan, Deputy State Public Defender, Denver, Colorado, for Juvenile-Appellant *Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024. 
1 ¶ 1 Juvenile T.B. appeals the district court’s order adopting the magistrate’s judgment adjudicating T.B. delinquent of criminal mischief. We reverse and remand for a new trial. I. Background ¶ 2 One evening, surveillance video recorded two unidentified teens spray-painting the side of a high school. An anonymous tip made to the Safe2tell hotline led a school administrator to question student C.H., who confessed to being one of the participants. C.H. later pleaded guilty for his role. Another anonymous tip led Officer Bradley Luebke to question T.B.’s parents about the vandalism. T.B.’s parents denied T.B.’s involvement, but T.B. was eventually charged for his participation in the crime. ¶ 3 At a bench trial before a magistrate, C.H. testified that T.B. was the other participant in the spray-painting. In addition, Officer Luebke testified about the Safe2tell tip that named T.B. as one of the spray painters, and C.H. testified about a Snapchat message he sent to T.B. encouraging T.B. not to talk to the police about the spray-painting. A picture of the Snapchat message was admitted into evidence. 
2 ¶ 4 T.B. raised an alibi defense, testifying that he was home on the night of the vandalism and asserting that C.H. had arbitrarily named T.B. to avoid “snitching” on another gang member. T.B.’s parents also testified that T.B. had been home that evening. ¶ 5 Ultimately, the magistrate ruled that C.H.’s testimony, corroborated by the Safe2tell tip and the Snapchat message, proved T.B. committed the vandalism. The magistrate adjudicated T.B. delinquent as charged. ¶ 6 In a petition for review filed with the district court, T.B. asserted, as relevant here, that the magistrate erred by considering the Safe2tell tip for the truth of the matter asserted and shifting the burden of proof to T.B. The district court adopted the magistrate’s adjudication, concluding that any consideration of hearsay evidence was harmless error and that the magistrate hadn’t shifted the burden. ¶ 7 T.B. appeals. In addition to reraising the two contentions he raised before the district court, he argues that the admission and consideration of the Safe2tell tip violated his right to confront witnesses against him. Because we conclude that the magistrate reversibly erred by considering the Safe2tell tip for the truth of what 
3 it asserted, we need not address T.B.’s arguments related to the confrontation clause or burden of proof. II. Standards of Review ¶ 8 Our review of a district court’s decision on a petition for magistrate review is “effectively a second layer of appellate review.” People in Interest of B.D., 2019 COA 57, ¶ 12, rev’d on other grounds, 2020 CO 87. Like the district court, “we must accept the magistrate’s factual findings unless clearly erroneous.” Id. However, we review de novo the district court’s and the magistrate’s legal conclusions. In re Parental Responsibilities Concerning D.P.G., 2020 COA 115, ¶ 15. ¶ 9 We review evidentiary rulings for an abuse of discretion. People v. Brown, 2022 COA 19, ¶ 57. When the asserted error is preserved by objection, we reverse if the error “substantially influenced the verdict or affected the fairness of the trial proceedings.” Hagos v. People, 2012 CO 63, ¶ 12 (quoting Tevlin v. People, 715 P.2d 338, 342 (Colo. 1986)) (describing harmless error). For unpreserved contentions, we will reverse only for plain error. See People v. Ujaama, 2012 COA 36, ¶ 38. Plain error is an “error that is both obvious and substantial and that so undermined the 
4 fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction.” Scott v. People, 2017 CO 16, ¶ 15. III. Discussion ¶ 10 T.B. contends that the magistrate erroneously considered the Safe2tell tip for the truth of what it asserted. He further asserts this error is reversible under any standard because the magistrate expressly relied on the tip in crediting C.H.’s testimony over T.B.’s. We agree. A. Additional Facts ¶ 11 The Safe2tell program allows students and others to anonymously report “unsafe, potentially harmful, dangerous, violent, or criminal activities in schools or the threat of those activities.” § 24-31-606(2)(a), C.R.S. 2024. At trial, Officer Luebke testified about two separate Safe2tell tips made about the spray-
painting incident. ¶ 12 Officer Luebke began testifying about the first Safe2tell tip by saying, “So, the first Safe2[t]ell report I had received stated . . . something along the line —” T.B. immediately objected to this testimony as hearsay. The magistrate overruled the objection and 
5 admitted the testimony “for the effect upon listener, and to lay context as to the investigation, not for the truth of the matter asserted.” ¶ 13 Officer Luebke then continued, explaining that the first Safe2tell tip named C.H. as the student who committed the vandalism. He then testified about contacting the principal of the high school and his review of the surveillance footage. ¶ 14 Next, Officer Luebke testified that he contacted T.B.’s family. When then asked why he contacted T.B.’s parents, Officer Luebke explained, “I knew to contact [C.H.] because he was listed in the Safe2[t]ell in the tip . . . . And then, also in a Safe2[t]ell tip, that would come, I believe it would come later on, it listed [T.B.] in the tip as being somebody who was with [C.H.] . . . .”
1 There was no objection to this testimony. ¶ 15 Asked what he did with the information about T.B., Officer Luebke said, [I]nside the Safe2[t]ell system, when you are an administrator you’re allowed to look at further chat that’s in there. And, typically that chat is 1 The tip didn’t name T.B. by his full name, but Officer Luebke was able to identify T.B. as the person named by the tip by comparing the tip with records from a school in the district. 
6 between law enforcement, the Safe2[t]ell system, and maybe any administrators who have access to look at it. Within that system, the principal at [T.B.’s high school] said, that [T.B.] —” T.B. then objected on the grounds that “this is not in discovery. [W]hatever is in this chat that was not provided to [the] [d]efense is improper.” The magistrate overruled the objection because the testimony was “relevant to the investigation, and what led [Officer Luebke] to ultimately contact [T.B.] and his parents.” ¶ 16 After the close of evidence, the magistrate found that “[b]oth sides have acknowledged that really, the only question at issue, is whether the juvenile in this case, [T.B.], was the person who was with [C.H.] that night.” Given the conflicting testimony of C.H., T.B., and T.B.’s parents, she also recognized that “what this comes down to is, which witnesses [the court] is to believe.” She acknowledged that there were “credibility issues with both [C.H.], and with the witnesses that the defense presented.” When evaluating witness credibility, the magistrate considered, among other things, “how the testimony of each witness is either supported or contradicted by the other evidence in the case.” The magistrate found C.H.’s testimony credible because 
7 what [C.H.] has testified to is supported by the other evidence that I have been presented, specifically the fact that a second Safe2[t]ell message named a person, [T.B.], as the person who was with [C.H.]. And, the text messages, or the Snapchat messages that were sent from [C.H.] to [T.B.] discussing this incident. The Defense’s theory is that [C.H.] randomly accused [T.B.] in order to protect members of a gang . . . . And, to get to that conclusion I would have to find that the second Safe2[t]ell report, as well as the Snapchat message, were all part of some elaborate scheme that [C.H.] carried out to essentially frame [T.B.]. ¶ 17 In light of these findings, the magistrate adjudicated T.B. delinquent. B. Preservation ¶ 18 The parties dispute whether T.B. preserved his hearsay objections for review. The district court found that the issue was preserved because (1) T.B.’s objection to the first tip alerted the magistrate to the hearsay issue; and (2) although T.B.’s objection to the second tip was based on a discovery violation, the magistrate’s ruling that the tip was “relevant to the investigation, and what led [Officer Luebke] to ultimately contact [T.B.] and his parents” indicated that the objection drew the magistrate’s attention to the hearsay issue related to the second tip. 
8 ¶ 19 We conclude T.B.’s hearsay objection wasn’t preserved. The testimony was clear that there were two separate Safe2tell tips. Officer Luebke’s discussion of each tip was separated by more than a page of testimony. We don’t agree that T.B.’s objection to the first tip was sufficient to preserve a hearsay objection to the second tip. See People v. Walker, 2022 COA 15, ¶ 28 (“Where a claim of error is not preserved by contemporaneous objection, we may reverse only if plain error occurred.”). Moreover, when the officer testified that the second tip named T.B., there was no objection at all. Only when the officer began testifying about chat logs did the defense object based on discovery violations. This isn’t merely an “imprecise” objection; it is an entirely different objection than the one raised on appeal. See Ujaama, ¶ 37 (“An issue is unpreserved for review when . . . an objection or request was made in the trial court, but on grounds different from those raised on appeal . . . .”). ¶ 20 Furthermore, we aren’t persuaded that the magistrate ruled on the hearsay issue T.B. raises before us for two reasons. First, the magistrate’s ruling was made about the chat log, not about T.B. being named in the tip. And second, the ruling was expressly based on relevance, not hearsay. Cf. People v. McFee, 2016 COA 97, ¶ 31 
9 (An issue is sufficiently preserved when “the trial court actually rules on the claim raised on appeal.”). ¶ 21 Accordingly, we review T.B.’s hearsay contention for plain error. See Ujaama, ¶ 38. C. Applicable Law ¶ 22 Hearsay is “a statement other than one made by the declarant while testifying at [a] trial or hearing, offered in evidence to prove the truth of the matter asserted.” CRE 801(c); People v. Robinson, 226 P.3d 1145, 1151 (Colo. App. 2009). Hearsay statements are generally inadmissible. Blecha v. People, 962 P.2d 931, 937 (Colo. 1998); CRE 802. However, a statement isn’t hearsay if admitted solely to show its effect on the listener. People v. Phillips, 2012 COA 176, ¶ 107. D. Analysis 1. Admission Versus Use ¶ 23 Initially, we agree with T.B.’s contention that to the extent the Safe2tell tip was admitted for the truth of what it asserts (i.e., that T.B. spray-painted the school), it is hearsay that doesn’t fall into a recognized exception. The People don’t appear to dispute this argument. 
10 ¶ 24 The People contend that the tip was admitted (or could have been admitted) not for the truth of what it asserts, but to show why Officer Luebke contacted T.B.’s parents. We agree with this argument, too. See id. ¶ 25 However, T.B. contends that, even if the Safe2tell tip was admitted (or could have been admitted) for the proper purpose of showing its effect on the listener, the magistrate nevertheless erred by considering it evidence for the truth of what it asserted. In response, the People argue that (1) the magistrate did not misuse the Safe2tell tip; and (2) even if she did, the misuse of the tip doesn’t invalidate its admission. We agree with T.B. ¶ 26 First, as the magistrate herself noted, the case turned on the issue of witness credibility, and she believed C.H.’s testimony because it was corroborated by the tip. There’s no way for the tip to corroborate C.H.’s testimony unless the magistrate used it for the truth of what it asserted. We aren’t persuaded otherwise by the People’s argument that the magistrate used the tip “for its admitted nonhearsay purpose to rebut T.B.’s theory of defense.” In support of this argument, they cite the portion of the magistrate’s findings in which the magistrate discredited T.B.’s theory of defense in part 
11 because she “would have to find that” C.H. planted the tip as part of an “elaborate scheme” to “essentially frame [T.B.].” But T.B.’s theory of defense was that C.H. testified falsely. There’s little difference between crediting C.H.’s testimony because it was corroborated by the Safe2tell tip and discrediting T.B.’s theory that C.H. provided false testimony because of the existence of the same tip. Either way, the truth of the tip matters. Accordingly, we conclude that the magistrate used the evidence for improper purposes. ¶ 27 Next, the People argue that the way evidence is used doesn’t invalidate an otherwise proper admission. To get there, they rely on Robinson, 226 P.3d at 1152-54. In Robinson, an informant’s statements were introduced for “the nonhearsay purpose of showing their effect on the listening officers.” Id. at 1152. Although the division recognized “the danger that a jury might well misuse [the] evidence . . . particularly when the substance of the statements goes precisely to the issue that the government is required to prove,” it concluded that the “risk presents an issue not of hearsay, but of ‘legal’ relevance under CRE 403.” Id. After observing that the defendant did not raise CRE 403 on appeal, it rejected the 
12 defendant’s hearsay challenge, noting, “[W]e fail to perceive how, under these circumstances, a proper ruling admitting statements for a nonhearsay purpose may be rendered erroneous by their subsequent misuse.” Id. at 1153. Robinson also noted that the defendant could have protected himself from the potential misuse of the testimony by objecting to admissibility under CRE 403 or obtaining an appropriate limiting instruction. Id. at 1154. ¶ 28 While we don’t disagree with Robinson, the division’s reasoning is inapplicable under the circumstances of this case. Here, we don’t have a mere possibility that a jury might have misused the Safe2tell tip; rather, the magistrate’s findings make it clear that she did misuse it. And while we would generally presume that the magistrate disregarded any uses of the tip that were improper under CRE 403, we can’t do that here because the magistrate expressly accorded weight to the improper hearsay use in her decision. See People v. Kriho, 996 P.2d 158, 172 (Colo. App. 1999). Simply put, in a bench trial where the judge is the fact finder, there’s no practical difference between admitting the evidence for an improper purpose and explicitly using it for an improper purpose. 
13 2. Plain Error ¶ 29 We next conclude that the error was plain. Absent an exception, admitting or using hearsay evidence plainly violates CRE 802, so the error is obvious. We reject the People’s reliance on Robinson to support their argument to the contrary. As discussed above, Robinson affirmed the admission of evidence for nonhearsay purposes despite the theoretical possibility that a jury might misuse it. 226 P.3d at 1152-53. However, Robinson cannot reasonably be interpreted to stand for the proposition that, once evidence is properly admitted, a judicial officer acting as the fact finder is free to use the evidence for any purpose, including uses prohibited under the rules.
2 ¶ 30 We next conclude that the error was substantial. The only contested issue was identity, and C.H. was the only witness who linked T.B. to the spray-painting. Witness credibility was therefore the key question, with the magistrate noting, “[W]hat this comes down to is, which witnesses [the court] is to believe.” The 2 To be clear, the magistrate did not rely on People v. Robinson, 226 P.3d 1145 (Colo. App. 2009), when she referenced the tip in her findings. We address this argument only because it was raised by the People in their briefing. 
14 magistrate also observed that all witnesses, including C.H., had credibility problems. Ultimately, she chose to believe C.H. because two pieces of evidence corroborated his testimony: the Safe2tell tip and the Snapchat message C.H. sent T.B. after being questioned by police. In other words, the Safe2tell tip was one of only two pillars propping up C.H.’s testimony. And even though the Snapchat message remains undisturbed, it was authored by the very person the magistrate struggled to believe — C.H. On this record, we conclude that the error casts substantial doubt on the reliability of the conviction. See Scott, ¶ 15. IV. Disposition ¶ 31 We reverse the adjudication of delinquency and remand the case for a new trial. JUDGE BROWN and JUDGE BERGER concur.