Petitioner: The PEOPLE of the State of Colorado,

v.

Respondent: Daniel MCKINNEY.

No. 03SC516.

Supreme Court of Colorado.

Oct. 4, 2004.

As Modified on Denial of Rehearing Nov. 8, 2004.

Ken Salazar, Attorney General, Anthony J. Navarro, Assistant Attorney General Denver, for Petitioner.

David S. Kaplan, Colorado State Public Defender, Karen N. Taylor, Deputy State Public Defender Denver, for Respondent.

HOBBS, Justice.

We granted certiorari in this case to review the court of appeals decision in *People v. McKinney,* 80 P.3d 823 (Colo.App.2003).[1] The trial court entered judgment on a jury verdict convicting defendant, Daniel McKinney, of three counts of general theft, three counts of theft from an at-risk adult, and one count of conspiracy to commit theft. The trial court sentenced McKinney to a total of twelve years in the Department of Corrections. The court of appeals affirmed in part and reversed in part, leaving the twelve-year sentence intact. It affirmed McKinney's convictions for general theft and conspiracy, but reversed the three convictions for theft from an at-risk adult. The court of appeals held that the discovery tolling provision of the statute of limitations does not apply to thefts against at-risk adults and, therefore, the prosecution for those charges was time-barred because more than three years had elapsed since the time the criminal acts took place.

We disagree with the court of appeals and reverse. We hold that theft from an at-risk adult is an enhanced form of general theft. Because the discovery tolling provision of the

---

1. We granted certiorari on the following issues:
 1. Whether theft from an at-risk adult, as defined in Section 18–6.5–103(5), 6 C.R.S. (2002), is a penalty-enhanced form of theft, as defined in Section 18–4–401(1), 6 C.R.S. (2002).
 2. Whether the discovery tolling provision of the statute of limitations, Section 16–5–401(4.5), 6 C.R.S. (2002), applies to both theft and theft from an at-risk adult.

statute of limitations, section 16–5–401(4.5)(c), applies to general theft, it also includes theft from an at-risk adult. Accordingly, the period within which a prosecution for theft against an at-risk adult must be commenced does not begin to run until the time the victim discovers the criminal act.

## I.

At the time the criminal acts at issue in this case took place, Daniel McKinney owned an insurance agency. He sold insurance, annuities, and other investment products. Between 1994 and 1996, McKinney and his wife, Rachel McKinney, stole a total of $70,000 from three of McKinney's insurance clients. McKinney advised one set of clients to cash in two annuities valued at $20,000 each. McKinney took the money on the premise that he would invest it for his clients, but instead used the money for his own personal purposes.

McKinney convinced another client to cash in a $40,000 certificate of deposit so that the client could purchase a $30,000 annuity from him. McKinney and his wife then persuaded the client to cash in the annuity and deposit the money in two bank accounts: one-half into a joint savings account in the names of Mrs. McKinney and the client, and one-half into a checking account in the name of Mrs. McKinney alone. Over the following several months, Mrs. McKinney withdrew all of the $30,000 from both accounts and spent the money on the McKinneys' personal expenses.

All three victims were "at-risk adults" under Colorado law. Two victims were over the age of sixty, and the third was an adult formerly adjudged to be mentally incapacitated as a result of a head injury.

On December 4, 1998, both Mr. and Mrs. McKinney were charged with the following: four counts of theft of property valued at over $15,000 pursuant to section 18–4–401(1)(a), 6 C.R.S. (1998) ("general theft"); three counts of theft from an at-risk adult

pursuant to section 18–6.5–103(5), 6 C.R.S. (1998); and one count of conspiracy to commit theft pursuant to section 18–2–201, 6 C.R.S. (1998).

Mrs. McKinney pleaded guilty to conspiracy to commit theft and received a sentence of probation. During the course of finalizing her plea, she prepared a written statement implicating her husband in the thefts. The charges against McKinney proceeded to trial.

McKinney filed a pre-trial motion requesting the trial court to dismiss all of the charges filed against him on the ground that they were filed more than three years after the commission of the crimes and were beyond the three-year statute of limitations.[2] See § 16–5–401(1), 6 C.R.S. (2003) (three-year limitations period for felony theft). Upon agreement of the parties, the trial court deferred ruling on the motion until the end of McKinney's trial. At the conclusion of the prosecution's case, McKinney renewed his motion to dismiss all of the charges. The trial court denied the motion. It concluded that the evidence adduced at trial showed that the "date of *discovery* as to all of these matters was within the statute of limitations period." (emphasis added).

The jury convicted McKinney of all seven remaining charges.[3] The trial court sentenced him as follows: three four-year sentences for the general theft convictions; three two-year sentences for the theft from an at-risk adult convictions; and one two-year sentence for the conspiracy to commit theft conviction. The general theft sentences were imposed to run consecutively, and the remaining four sentences were imposed to run concurrently with each other and with the general theft sentences. McKinney received a total sentence of twelve years.

McKinney appealed all seven convictions to the court of appeals. The court of appeals affirmed McKinney's three convictions for general theft and the conviction for conspira-

2. The evidence at trial shows that the McKinneys took money from the first set of Mr. McKinney's clients between June and August of 1994 and from the third client in October of 1995. Thus, the criminal conduct against all three clients took place more than three years before the

prosecution filed the information against the McKinneys in December, 1998.

3. The counts were amended, and only three counts of theft under section 18–4–401(1)(a) were given to the jury.

cy, and reversed the three convictions for theft from an at-risk adult, leaving intact a twelve-year sentence. The court of appeals held that the discovery tolling provision of the statute of limitations—which tolls the running of the limitation period until the victim discovers the crime—is not applicable to thefts against at-risk adults. The court therefore concluded that the statute of limitations barred prosecution of the charges for theft from an at-risk adult because the charges were filed more than three years from when the criminal acts took place.

## II.

We disagree with the court of appeals and reverse. We hold that theft from an at-risk adult is an enhanced form of general theft. Because the discovery tolling provision of the statute of limitations, section 16–5–401(4.5), applies to general theft, it also includes theft from an at-risk adult. Accordingly, the period within which a prosecution for theft against an at-risk adult must be commenced does not begin to run until the time the victim discovers the criminal act.

### A. Standard of Review

■ Whether the discovery tolling provision of the statute of limitations applies to thefts committed against at-risk adults is a question of law that we review de novo. *Mortgage Invs. Corp. v. Battle Mountain Corp.*, 70 P.3d 1176, 1183 (Colo.2003). When construing the statutes at issue in this case, our fundamental responsibility is to determine and give effect to the General Assembly's intent in enacting the statutes. *Whitaker v. People*, 48 P.3d 555, 558 (Colo.2002). If the plain language of the statutes clearly

expresses the legislative intent, we must give effect to the ordinary meaning of the statutory language. *Id.*

### B. Theft against At–Risk Adults

The Colorado Criminal Code contains an entire article dedicated to wrongs committed against at-risk adults. § 18–6.5–101 to –106, 6 C.R.S. (2003) ("Article 6.5"). In the legislative declaration to Article 6.5, the General Assembly expressed its intent to impose more severe penalties for specified crimes when the victim is "at-risk." § 18–6.5–101, 6 C.R.S. (2003).[4]

The General Assembly defined two categories of victims that qualify for this heightened protection: at-risk adults and at-risk juveniles. § 18–6.5–101. An at-risk adult is "any person who is sixty years of age or older or any person who is eighteen years of age or older and is a person with a disability." § 18–6.5–102(1), 6 C.R.S. (2003).

■ Within Article 6.5, section 18–6.5–103, 6 C.R.S. (2003) enumerates which criminal acts are subject to increased penalties when committed against an at-risk victim. Section 18–6.5–103(5) states that:

Any person who commits theft, and commits any element or portion of the offense in the presence of the victim, as such crime is described in section 18–4–401(1), and the victim is an at-risk adult or an at-risk juvenile, commits a class 5 felony if the value of the thing involved is less than five hundred dollars or a class 3 felony if the value of the thing involved is five hundred dollars or more. Theft from the person of an at-risk adult or an at-risk juvenile by

---

**4.** "The general assembly recognizes that fear of mistreatment is one of the major personal concerns of at-risk adults and at-risk juveniles and that at-risk adults and at-risk juveniles are more vulnerable to and disproportionately damaged by crime in general but, more specifically, by abuse, exploitation, and neglect because they are less able to protect themselves against offenders, a number of whom are in positions of trust, and because they are more likely to receive serious injury from crimes committed against them and not to fully recover from such injury. At-risk adults and at-risk juveniles are more impacted by crime than the general population because they tend to suffer great relative deprivation, finan-

cially, physically, and psychologically, as a result of the abuses against them. A significant number of at-risk adults and at-risk juveniles are not as physically or emotionally equipped to protect themselves or aid in their own security as non-at-risk adults and non-at-risk juveniles in society. They are far more susceptible than the general population to the adverse long-term effects of crimes committed against them, including abuse, exploitation, and neglect. The general assembly therefore finds that penalties for specified crimes committed against at-risk adults and at-risk juveniles should be more severe than the penalties for the commission of said crimes against other members of society." § 18–6.5–101.

means other than the use of force, threat, or intimidation is a class 4 felony without regard to the value of the thing taken. § 18–6.5–103(5). This section thus imposes a more severe punishment for the commission of theft against at-risk adults as compared to the commission of theft against other victims, but it does not list elements that constitute the commission of theft against an at-risk adult. Instead, it refers back to the general theft statute by cross referencing that statute. As a consequence, the theft against at-risk adults provision does not apply unless a defendant's conduct constitutes theft under the general theft statute.[5]

## C. Discovery Tolling Provision of the Statute of Limitations

■ Criminal statutes of limitation prescribe the time period within which the prosecution must commence an action on a claim. They serve these purposes: (1) to protect individuals from defending themselves against stale charges; (2) to prevent punishment for acts committed in the remote past; and (3) to insure that accuseds are informed of the decision to prosecute and the general nature of charges with sufficient promptness to allow them to prepare their defenses before evidence of their innocence is weakened by age. *Higgins v. People*, 868 P.2d 371, 373 (Colo.1994).

The limitations period for most crimes begins to run at the time that the criminal act takes place. For example, a prosecution for most felonies must commence within three years from the commission of the crime. § 16–5–401(1). However, the General Assembly has specified numerous crimes for which the statute of limitations does not begin to run until the criminal act is discovered. § 16–5–401(4.5). The discovery tolling provision applies to enumerated crimes, which include theft, criminal impersonation, offenses relating to perjury, unlawful concealment of transactions, and embezzlement or misapplication of funds. § 16–5–401(4.5).[6] For these crimes, until the time of discovery, the statute of limitations is tolled.

Because of the discovery tolling provision, the opportunity to prosecute the commission of certain crimes will not be foreclosed by criminal conduct that remains undetected for extended periods of time. The crimes enumerated in the discovery tolling provision of the statute of limitations are similar in that they share the quality of being susceptible to concealment from the victim.[7] *See, e.g.,* 4 Wayne R. LaFave, Jerold H. Israel & Nancy J. King, *Criminal Procedure* § 18.5(a) (2d ed. 1999 & Supp.2004) ("The assumption underlying the rules which usually apply [that the period of limitations begins to run with the commission of the crime] 'is that most offenses are known at least to the victim at the time of or soon after its [sic] commission, or that the offense can be discovered by adequate investigation by enforcement officials.' "); Robert J. Dieter, *Colorado Criminal Practice and Procedure* § 9.44 (1996 & Supp.2003) ("In certain instances where the

---

**5.** The general theft statute, § 18-4-401(1), provides in part that:

(1) A person commits theft when he knowingly obtains or exercises control over anything of value of another without authorization, or by threat or deception, and:

(a) Intends to deprive the other person permanently of the use or benefit of the thing of value; or

(b) Knowingly uses, conceals, or abandons the thing of value in such manner as to deprive the other person permanently of its use or benefit; or

· (c) Uses, conceals, or abandons the thing of value intending that such use, concealment, or abandonment will deprive the other person permanently of its use and benefit; or

(d) Demands any consideration to which he is not legally entitled as a condition of restoring the thing of value to the other person.

Our analysis would also logically apply to the inchoate crimes described in section 18-6.5-103(8), attempt, solicitation, or conspiracy to commit such offenses, crimes which are not at issue here.

**6.** "The period within which a prosecution must be commenced shall begin to run upon discovery of the criminal act or the delinquent act for: ... (c) Theft, pursuant to section 18–4–401, C.R.S." § 16–5–401(4.5).

**7.** An exception is the application of the discovery tolling provision to "Offenses relating to the 'Uniform Commercial Code,' pursuant to part 5 of article 5 of title 18, C.R.S." § 16–5–401(4.5)(a), 6 C.R.S. (2003). Such offenses are not necessarily susceptible to concealment.

offense is not likely to be readily detected upon commission of the underlying criminal act, the running of the statute of limitations does not commence until discovery of the criminal act constituting the offense.").

The discovery tolling provision does not apply to crimes such as assault, kidnapping, or robbery, which, by their nature, cannot remain undiscovered by the victim for extended periods of time. *See* § 18–3–202 to – 204, 6 C.R.S. (2003) (assault in the first, second, and third degrees); § 18–3–301 to – 302, 6 C.R.S. (2003) (first and second degree kidnapping); § 18–4–301 to –302, 6 C.R.S. (2003) (robbery and aggravated robbery).

### D. Section 18–6.5–103(5) Enhances the Penalty for General Theft When Committed against an At–Risk Adult

 When interpreting statutes, we adopt the statutory construction that best effectuates the legislative intent and design. *Bd. of County Com'rs v. Park County Sportsmen's Ranch, LLP*, 45 P.3d 693, 711 (Colo.2002). In determining the scope and intent of a statute, the best guide is often the legislative declaration of policy. *Passamano v. Travelers Indem. Co.*, 882 P.2d 1312, 1325 (Colo.1994)(Erickson, J., specially concurring).

██ Section 18–6.5–103(5) enhances the penalties for general theft when the theft is committed against an at-risk adult; it does not create a separate offense. The theft from an at-risk adult statute specifically states that its purpose is to prescribe greater penalties for thefts against at-risk adults. In its legislative declaration to the consolidated at-risk adult provisions, the General Assembly declared that at-risk adults are "more vulnerable to and disproportionately damaged by crime" and are "far more susceptible

than the general population to the adverse long-term effects of crimes committed against them. . . . ." § 18–6.5–101. The General Assembly explained that at-risk victims are less likely to fully recover from crimes committed against them, and a significant number of at-risk victims are "not as physically or emotionally equipped to protect themselves or aid in their own security as non-at-risk adults and non-at-risk juveniles in society." *Id.* Because of the increased vulnerability of such victims, the "penalties for specified crimes committed against at-risk adults . . . should be more severe than the penalties for the commission of said crimes against other members of society." *Id.*

Examining section 18–6.5–103(5), we conclude that the General Assembly intended it to function as a penalty enhancer to general theft. Instead of defining the crime and listing its elements, the at-risk adult statute references the general theft statute's definition of the crime. § 18–6.5–103(5) (citing § 18–4–401(1)). Therefore, to prove that a defendant has committed theft from an at-risk adult, the prosecution must first prove that the defendant has committed general theft. Proof of the factors in the adult at-risk provision of section 18–6.5–103(5) need not be met for a defendant to be found guilty of general theft, but a jury finding of the additional at-risk adult factors enhances the penalty for the general theft crime.[8] *See People v. Leske*, 957 P.2d 1030, 1039 (Colo. 1998) (a statutory provision is a penalty enhancer if its proof, while raising the felony level of an offense, is not necessarily required to secure a conviction).

### E. The Discovery Tolling provision Applies to theft against an At-Risk Adult.

██ The discovery tolling provision clearly applies to "theft, pursuant to section 18–4–

---

8. We acknowledge that the factors considered in determining whether a crime is a sentence enhancer are similar to those considered in determining whether a crime is a lesser included offense of another. The application of these doctrines to a particular case can be confusing. *Compare Vega v. People*, 893 P.2d 107 (Colo. 1995) (a sentence enhancing provision requires a conviction of the underlying offense, and its effect is to increase the required sentence) *with People v. Henderson*, 810 P.2d 1058 (Colo.1991)

(an offense is a lesser included for purposes of merging into a greater offense when the proof of the essential elements of the greater offense necessarily establishes all the elements required to prove the lesser offense). It is also unclear, in light of *Blakely v. Washington*, —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), whether the traditional sentence enhancer analysis retains vitality. Here, however, the issues raised in *Blakely* are not of concern.

401." § 16–5–401(4.5)(c). Theft against an at-risk adult enhances a general theft crime. Accordingly, it is immaterial that the discovery tolling provision does not expressly include or exclude thefts committed against at-risk adults. The statute of limitations tolling provision encompasses theft against an at-risk adult.

This conclusion is consistent with the history of the discovery tolling provision and the theft against an at-risk adult provision. In 1991, the General Assembly enacted the at-risk adult provisions of sections 18–6.5–101 to –106, 1991 Colo. Sess. Laws, ch. 288, p. 1778, but left the at-risk adult provision in the general theft statute.[9] Until 1993, the Criminal Code thus contained repetitive statutory provisions requiring more severe penalties for thefts committed against at-risk adults. 1993 Colo. Sess. Laws, ch. 292, p. 1742.

While the at-risk adults provision was still part of the general theft statute, the General Assembly, in 1992, amended the discovery tolling provision to apply to "theft, pursuant to section 18–4–401." 1992 Colo. Sess. Laws, ch. 73, p. 400. The 1992 amendment did not contain any words of limitation to exclude any subsections of the general theft statute. 1992 Colo. Sess. Laws, ch. 73, p. 400. *Id.* Thus, the broad reference to the general theft statute in the 1992 amendment included thefts that are punished more severely because the victim is at least sixty years old.

In 1993, the General Assembly chose to strike the repetitive at-risk adults provision of the general theft statute, section 18–4–401(7), in favor of section 18–6.5–103(5), which it had placed within the consolidated at-risk adult provisions. 1993 Colo. Sess. Laws, ch. 292, p. 1742. When it made this decision, the General Assembly did not intend to exclude thefts committed against at-risk adults from the discovery tolling provision. To conclude otherwise would defeat the legislature's intent to protect this vulnerable group of citizens against concealed crimes, contrary to evident legislative policy choices.

█ The discovery tolling provision initially applied only to offenses relating to the Uniform Commercial Code. 1992 Colo. Sess. Laws, ch. 73, p. 400. In 1992, the General Assembly amended the discovery tolling provision to expand the number of crimes included under the statute. *Id.* The crimes added by the amendment share the quality of being crimes of deception that are capable of being concealed from the victim. The goal of the discovery tolling provision is to extend the limitations period for crimes that are susceptible to remaining undetected for extended periods of time, so that prosecution of such crimes will not be foreclosed as a result of concealment. *See, e.g.,* LaFave, Israel &

---

**9.** Former section 18–4–401(7)(a), 8B C.R.S. (1986 & Supp.1991) read as follows:

(7)(a) The general assembly recognizes that fear of crime is one of the major personal concerns of elderly persons or handicapped persons and that elderly persons or handicapped persons are more vulnerable to and disproportionately damaged by crime. The elderly or the handicapped are particularly impacted by the crime of theft because they tend to suffer the greatest relative deprivation—financially and psychologically—as a result of the crimes against them. Elderly persons or handicapped persons are seldom as physically or emotionally equipped to protect themselves or aid in their own security as are their younger or more physically able counterparts in society. At the same time, they are far more susceptible than other groups to the adverse long-term effects of theft. The loss of money and material goods through theft represents a substantial financial impact upon most elderly victims or handicapped victims. The general assembly therefore finds that the penalty for the crime of theft from an elderly or handicapped person should be more severe than the penalty for theft from other members of society. A person commits theft from the elderly or the handicapped when he commits theft under subsection (1) of this section and the victim is a person who is sixty years of age or older or disabled because of the loss of or permanent loss of use of a hand or foot or because of blindness or the permanent impairment of vision of both eyes to such a degree as to constitute virtual blindness and the defendant commits any element or portion of the offense in the presence of the victim. Theft from the elderly or the handicapped is a class 5 felony if the value of the thing involved is less than three hundred dollars or a class 3 felony if the value of the thing involved is three hundred dollars or more. Theft from the person of the elderly or the handicapped by means other than the use of force, threat, or intimidation is a class 4 felony without regard to the value of the thing taken.

King, *supra; Criminal Procedure* § 18.5(a); Dieter, *supra.* Indeed, without the discovery tolling provision, our Criminal Code would provide surreptitious defendants a windfall for successfully concealing criminal conduct from their victims, contrary to the General Assembly's intent.

We therefore conclude that the General Assembly intended the discovery tolling provision of the statute of limitations, section 16–5–401(4.5), to be applicable to theft committed against at-risk adults, an enhanced form of general theft.

### III.

Because we conclude that the discovery tolling provision applies to theft against an

at-risk adult, we reverse the court of appeals. However, because section 18–6.5–103(5) enhances the penalties under the general theft statute, but does not create a separate offense, we further conclude that the trial court erroneously entered separate convictions for theft and theft against an at-risk adult.[10] *See People v. Graham,* 53 P.3d 658, 664 (Colo.App.2001) (penalty enhancer is not the basis for separate substantive conviction). We therefore remand to the trial court to correct the judgment of conviction and resentence McKinney.

---

**10.** In finding McKinney guilty of the three charged at-risk offenses beyond a reasonable doubt, the jury necessarily found the facts required to enhance the three general theft convictions.