The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
April 18, 2019

## 2019COA57

**No. 17CA1924, *People in the Interest of B.D.* — Juvenile Court
— Delinquency; Crimes — Theft; Criminal Law — Sentencing —
Crimes Against At-Risk Persons**

In this delinquency proceeding, a juvenile appeals from a

magistrate's order adjudicating him delinquent and from the district

court's order denying his petition for review and adopting the

magistrate's order and judgment.  On appeal, the juvenile contends

the magistrate erred in denying his motion to suppress and in

adjudicating him as a complicitor to an enhanced crime of theft

from an at-risk adult.  A division of the court of appeals affirms the

magistrate's suppression ruling but concludes that, applying *People

v. Childress*, 2015 CO 65M, there was insufficient evidence to

adjudicate the juvenile as a complicitor to theft from at-risk adult,

§ 18-6.5-103(5), C.R.S. 2018.  In doing so, the division extends the

"dual mental state" requirement discussed in *Childress* from strict liability offenses to also reach the strict liability sentence enhancer of theft committed in the presence of an at-risk adult.

Court of Appeals No. 17CA1924
Jefferson County District Court No. 16JD355
Honorable Ann Gail Meinster, Judge
Honorable Andrew Todd Fitzgerald, Magistrate

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of B.D.,

Juvenile-Appellant.

JUDGMENT AFFIRMED IN PART, REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division III
Opinion by JUDGE WELLING
Webb and Harris, JJ., concur

Announced April 18, 2019

Philip J. Weiser, Attorney General, Gabriel P. Olivares, Assistant Attorney General, Denver, Colorado, for Petitioner-Appellee

Tara Jorfald, Alternate Defense Counsel, Lakewood, Colorado, for Juvenile-Appellant

¶ 1    In this delinquency proceeding, the juvenile, B.D., appeals from the magistrate's order adjudicating him delinquent based on findings that he committed acts that, if committed by an adult, would constitute three felonies and one misdemeanor, and from the district court's order denying his petition for review and adopting the magistrate's order and judgment.

¶ 2    B.D., along with two other juveniles, broke into two homes and stole several items.  At one of the homes, one of B.D.'s accomplices crossed paths with the seventy-seven-year-old homeowner.  B.D. was adjudicated delinquent for two counts of felony burglary — one count for each home — and two counts of theft.  One of the theft counts was a misdemeanor but the other was enhanced to a class 5 felony because it was committed in the presence of an at-risk person.  With respect to the adjudication for theft against an at-risk person, B.D. was adjudicated only as a complicitor.

¶ 3    On appeal, B.D. contends that the magistrate erred in denying his motion to suppress and in adjudicating him as a complicitor on the enhanced theft charge.  We are not persuaded that the magistrate erred in his suppression ruling, but we do conclude that, applying *People v. Childress*, 2015 CO 65M, there was insufficient

evidence to adjudicate B.D. as a complicitor to theft from an at-risk person.

¶ 4        In *Childress*, ¶ 29, our supreme court held that a complicitor can be held criminally responsible for a strict liability crime committed by another if there is evidence that the complicitor (1) intended that the principal would commit the strict liability crime and (2) was aware of those circumstances attending the act or conduct he or she sought to further that were necessary for commission of the offense in question.  In this case, we are called on to apply that holding to a statute that enhances the penalty for a theft that is committed "in the presence of" an at-risk person.  § 18-6.5-103(5), C.R.S. 2018.

¶ 5        We conclude that the *Childress* analysis applies to a strict liability sentence enhancer.  Because we also conclude that there was no evidence that B.D. was aware that the principal would commit the burglary "in the presence of" an at-risk person, we reverse the adjudication for felony theft and remand the case for resentencing.  We affirm the judgment in all other respects.

## I.    Background

¶ 6    One afternoon, a police officer, Gregory Strandberg, received a report of a home burglary in his patrol area, and he responded to the scene. When he got there, the homeowner was in his driveway. The homeowner reported to the officer that he had returned home to find a young man in his house, and he saw that young man run out of his house and to the north. Officer Strandberg drove in that direction; within a few blocks, he saw three young men walking toward him. Officer Strandberg initially drove past the three young men but then turned his car around to talk with them.[1]

¶ 7    Officer Strandberg parked his car, got out, and asked the young men, in a conversational manner, whether they had seen anything unusual in the neighborhood. During this conversation, four other officers arrived on scene. Each officer arrived in his own car, wearing a standard police uniform. The officers were armed, but at no time did any of the officers remove their guns or tasers

---

[1] Police later learned that two houses in the area had been burglarized on the same day. At trial, there was evidence introduced that the same young men were involved with both burglaries.

from their holsters. The officers separated the three juveniles so that they could talk to each of them without interference from the others. Officer Strandberg talked with K.K. while another officer, Sergeant Lewis Tomasetti, questioned B.D.

¶ 8    Sergeant Tomasetti testified that when he arrived on scene he moved B.D. about ten feet from the other two juveniles. Then, in a conversational and calm tone, he asked B.D. for identifying information and whether he had anything illegal in his possession. B.D. responded that he had alcohol in his backpack. Sergeant Tomasetti asked B.D. two times if he could search his backpack. After B.D. said yes both times, Sergeant Tomasetti searched B.D.'s backpack and found a bottle of vodka and an iPad. Sergeant Tomasetti would later learn that both of these items had been stolen from one of the homes. The only other conversation the two had was when Sergeant Tomasetti asked B.D. whether his father was available that afternoon.

¶ 9    The homeowner arrived on scene a few minutes after Officer Strandberg's initial encounter and identified K.K. as the person who had been in his home. Police then arrested all three juveniles.

Only eight minutes had elapsed from when the victim reported the burglary.

¶ 10     Before trial, B.D. moved to suppress, arguing that (1) he was subjected to custodial interrogation and, therefore, should have been advised of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966); (2) he should have had a parent present for his interrogation pursuant to section 19-2-511, C.R.S. 2018; and (3) his consent to search the backpack was involuntary. The magistrate denied B.D.'s motion. The magistrate later conducted a bench trial and adjudicated B.D. delinquent on all four charges. The magistrate also concluded that because the victim of one of the thefts was over seventy years old, B.D. had committed theft from an at-risk person.

¶ 11     Following sentencing, B.D. timely filed a petition for review in district court. In a written order, the district court denied B.D.'s petition for review and adopted the magistrate's orders and judgment.

## II.     Analysis

¶ 12     A petition for district court review of an order entered by a magistrate is a prerequisite to an appeal of such order. § 19-1-

108(5.5), C.R.S. 2018.  A district court reviewing a magistrate's decision under C.R.M. 7(a) may not alter the magistrate's factual findings unless clearly erroneous.  C.R.M. 7(a)(9).  Appeals to this court from juvenile adjudications and sentences are conducted pursuant to the rules of appellate procedure.  *See* §§ 19-1-109(1), 19-2-903(1), C.R.S. 2018.  Our review of the district court's decision is effectively a second layer of appellate review, and, like the district court, we must accept the magistrate's factual findings unless clearly erroneous.  *In re Parental Responsibilities Concerning G.E.R.*, 264 P.3d 637, 638-39 (Colo. App. 2011).  We may, however, set aside a district court's order based on errors of law, which we review de novo.  *People in Interest of S.G.L.*, 214 P.3d 580, 583 (Colo. App. 2009).

¶ 13    B.D. raises two issues on appeal.  First, he contends that the magistrate made various errors in his suppression ruling.  Second, he argues there was insufficient evidence to support the magistrate's finding that he was a complicitor to theft from an at-risk person.  We reject his first contention, but we agree with his second.

6

## A. Search and Seizure

¶ 14     B.D. argues that police improperly obtained evidence in three ways.  First, he argues that the police obtained incriminating statements during a custodial interrogation in violation of *Miranda*.[2]  Second, he contends that he was coerced into allowing police to search his backpack (i.e., that his consent to search his backpack was not voluntary).  And third, he asserts that his fingerprints were improperly obtained.

### 1. No *Miranda* Violation

¶ 15     B.D. argues that he made incriminating statements while subject to custodial interrogation.  But, based on the record, the only incriminating statement that B.D. made to Sergeant Tomasetti was that he had alcohol in his backpack.  And B.D. was not in custody when he made this statement.

¶ 16     We review a magistrate's ruling at a suppression hearing as a mixed question of law and fact.  *People v. Stock*, 2017 CO 80, ¶ 13.

---

[2] B.D.'s statutory argument that he was entitled to have a parent present at the interrogation is no different than his constitutional argument because the statute only applies if the juvenile is under "custodial interrogation." § 19-2-511, C.R.S. 2018.

7

In doing so, we defer to the magistrate's findings of historical fact, but we assess the legal effect of those facts de novo. *Id.*

¶ 17    It is undisputed that the police did not give B.D. a *Miranda* advisement before questioning him. But such an advisement is only required when a suspect is in custody and subject to interrogation. *Miranda,* 384 U.S. at 438; *Effland v. People,* 240 P.3d 868, 873 (Colo. 2010). In this case, the parties dispute only whether B.D. was in custody.

¶ 18    A person is in custody for *Miranda* purposes if "a reasonable person in the suspect's position would have believed that his freedom of action had been curtailed to a degree associated with a formal arrest." *People v. Sampson,* 2017 CO 100, ¶ 18. This is an objective inquiry that involves evaluating the totality of the circumstances surrounding the suspect's interaction with police. *Id.* When making this determination, a court should consider a number of factors, including the following:

> (1) the time, place, and purpose of the encounter; (2) the persons present during the interrogation; (3) the words spoken by the officer to the defendant; (4) the officer's tone of voice and general demeanor; (5) the length and mood of the interrogation; (6) whether any limitation of movement or other form of

> restraint was placed on the defendant during the interrogation; (7) the officer's response to any questions asked by the defendant; (8) whether directions were given to the defendant during the interrogation; and (9) the defendant's verbal or nonverbal response to such directions.

*Id.* (quoting *People v. Matheny*, 46 P.3d 453, 465-66 (Colo. 2002)). These factors apply equally in juvenile cases, but courts must also consider the juvenile's age. *People v. N.A.S.*, 2014 CO 65, ¶ 9 (citing *J.D.B. v. North Carolina*, 564 U.S. 261, 277 (2011)).

¶ 19 When B.D. made the statement to Sergeant Tomasetti that he had alcohol in his backpack, he was on the street, in a public place, with his friends, being asked questions by a police officer in a calm and conversational tone. Sergeant Tomasetti testified that the entire encounter was "low-key" and he was surprised at how "nonchalant" B.D. was acting. In addition, the encounter up to that point had only lasted a few minutes. When Sergeant Tomasetti questioned B.D., they walked only far enough to be out of earshot of the other officers and juveniles.

¶ 20 As the magistrate recognized, some facts support a finding that B.D. was in custody. For example, B.D. was separated from his friends during the interrogation. But B.D. remained out on the

street; he was not isolated or secreted away. *See People v. Elmarr*, 181 P.3d 1157, 1164 (Colo. 2008) (defendant was in custody when he was "in a small room isolated from others"). Also, B.D. was sixteen at the time of the encounter, but the fact that he was a juvenile is not dispositive of custody. *N.A.S.*, ¶ 9. The magistrate fulfilled his obligation by considering B.D.'s age and properly balanced that fact with the other relevant factors.

¶ 21 B.D. relies on *People v. Polander*, 41 P.3d 698 (Colo. 2001), to support his argument that he was in custody. *Polander*, however, is distinguishable. In that case, two officers approached a suspicious van at approximately 11 p.m. *Id.* at 701. The officers found three people in the back of the van and ordered them to get out so they could be searched for weapons. *Id.* The occupants complied, and during the search one of the officers found drugs on the driver and ordered him to sit on the curb. *Id.*

¶ 22 The other officer, who was searching the passengers, ordered them to sit on the curb next to the driver. *Id.* While the three were sitting on the curb, police asked who owned a purse that they had found in the van. *Id.* The defendant admitted it was her purse. *Id.* Because drugs were in the purse, the defendant was charged with

possession of narcotics, but before trial she moved to suppress the statements she made while she was seated on the curb. *Id.*

¶ 23 The trial court suppressed her statements and our supreme court affirmed, concluding that the defendant was in custody because "it was apparent to all that the police had grounds to arrest the occupants" and that "it [was] clear that the defendant had every reason to believe she would not be briefly detained and then released." *Id.* at 705. In contrast, B.D. had no reason to believe that he, or his friends, would be arrested before telling the officer that he had alcohol in his backpack. Indeed, at that point the homeowner had not yet identified K.K. and, unlike the defendant in *Polander*, B.D. had not yet made any statement acknowledging the fact that he possessed contraband that might lead to his arrest.

¶ 24 B.D. also argues that he was in custody no later than when Sergeant Tomasetti took his backpack to search it. Even assuming that is true, the record does not indicate that B.D. made any incriminating statements after Sergeant Tomasetti took the backpack. Further, *Miranda*'s protections do not apply to physical evidence. *United States v. Patane,* 542 U.S. 630, 641 (2004) (stating that the Constitution's Self-Incrimination Clause does not require

11

exclusion of a gun the police found as the result of a defendant's pre-*Miranda* consent to a search of his bedroom); *People v. Cowart*, 244 P.3d 1199, 1206 (Colo. 2010) ("[F]ailure to give a defendant a *Miranda* warning does not require suppression of physical fruits of the suspect's unwarned but voluntary statements.").

¶ 25    The evidence that B.D. contends was introduced based on the search of his backpack was the bottle of vodka and the iPad, both of which connected B.D. to the burglaries. Those items were admitted as the fruits of a consensual search. To comply with the Constitution, however, B.D.'s consent to search must have been voluntary. That is where we turn next.

## 2.    Voluntariness of Search

¶ 26    "Voluntariness requires a free and unconstrained choice and consent that is not the result of duress, coercion, or any other form of undue influence." *People v. Lehmkuhl*, 117 P.3d 98, 102 (Colo. App. 2004). In determining whether a consent is voluntary, we consider the defendant's "subjective characteristics, such as age, education, and knowledge, as well as the circumstances of the search, such as its location and duration, and the environment in

which a defendant gives consent." *People v. Berdahl*, 2012 COA 179, ¶ 34.

¶ 27    The record shows that B.D. voluntarily consented to the search of his backpack.  In the few minutes that Sergeant Tomasetti was talking to B.D., Sergeant Tomasetti did nothing coercive or deceptive.  He asked B.D. if he could search his backpack; B.D. said yes.  Sergeant Tomasetti asked a second time, telling B.D. that he did not have to consent; B.D. again said yes.  There was simply nothing coercive about this search.

¶ 28    Just as in the custody determination, age is a factor that courts must consider when determining whether a juvenile's consent to search was voluntary.  *Id.*  But it is not the only factor.  *See People in Interest of S.J.*, 778 P.2d 1384, 1388 (Colo. 1989) (concluding that a juvenile, who is not in custody, can consent to a search so long as the consent is voluntary).  The magistrate here considered whether the consent was voluntary given the totality of circumstances at issue, including B.D.'s age, and determined that B.D. had voluntarily consented to the search.  The magistrate did not err in his conclusion.

### 3. Fingerprint Evidence

¶ 29     At trial, an expert testified that fingerprints found in one of the burglarized homes matched the fingerprints obtained from B.D. during his arrest.  Now, B.D. argues that the fingerprints that police obtained from him during the booking process were the fruit of an unlawful search.  *See Casillas v. People*, 2018 CO 78M, ¶ 19 (under the exclusionary rule, illegally obtained evidence may not be used).  B.D. contends that his arrest and subsequent fingerprinting were improper because he was in custody when he made his incriminating statement and because he did not voluntarily consent to the search of his backpack.  But, as we discussed above, there was nothing unlawful about either the police questioning of B.D. or the search of his backpack.

¶ 30     Because nothing about the interrogation, search, or arrest of B.D. was unlawful, police were authorized to obtain B.D.'s fingerprints as part of the routine identification process that accompanies an arrest.  *United States v. Olivares-Rangel*, 458 F.3d 1104, 1113 (10th Cir. 2006) (citing *Smith v. United States*, 324 F.2d 879, 882 (D.C. Cir. 1963)).  Accordingly, there was no error admitting the fingerprint evidence.

¶ 31     B.D. makes a related argument that the fingerprint evidence was unreliable because other evidence, like the fact that the homeowner identified only K.K. as the burglar, conflicted with the fingerprint evidence.  But B.D. is simply arguing that the magistrate shouldn't have placed any weight on the fingerprint evidence.  Only the fact finder can evaluate the weight to be given to the evidence or resolve conflicts in the evidence.  *People v. Richardson*, 2018 COA 120, ¶ 19.  We cannot revisit the weight that the magistrate placed on evidence.

## B.     Theft from an At-Risk Person

¶ 32     Finally, B.D. argues that the prosecution presented insufficient evidence to support the conclusion that he was guilty of theft in the presence of an at-risk person as a complicitor.  We agree.

¶ 33     A person commits theft if he or she "knowingly obtains, retains, or exercises control over anything of value of another without authorization."  § 18-4-401(1), C.R.S. 2018.  Theft of items valued between three hundred and seven hundred fifty dollars is a class 2 misdemeanor.  § 18-4-401(2)(d).  But the theft is a class 5

felony if the items stolen are worth more than five hundred dollars

and the person

> commits any element or portion of the offense
> in the presence of the victim . . . and the victim
> is an at-risk person, or . . . commits theft
> against an at-risk person while acting in a
> position of trust, whether or not in the
> presence of the victim, or . . . commits theft
> against an at-risk person knowing the victim is
> an at-risk person, whether in the presence of
> the victim or not.

§ 18-6.5-103(5). So, this statute describes three ways in which a

defendant can commit theft from an at-risk person: (1) an element

or portion of the offense is committed in the presence of an at-risk

person; (2) the defendant is in a position of trust as to the at-risk

person; or (3) the theft is committed by a defendant who knows that

the victim is an at-risk person. *Id.* Each basis is independent of

the others. *Cf. People v. Swain*, 959 P.2d 426, 430 n.12 (Colo.

1998) ("Generally, the word 'or' is a disjunctive particle that denotes

an alternative . . . .").

¶ 34     And the first of the three options — committing an element or

portion of the offense in the presence of an at-risk person — is a

strict liability sentence enhancer, in that the person committing the

offense does not need to know or be aware that the victim is an at-

16

risk person.  *See People v. Davis*, 935 P.2d 79, 86 (Colo. App. 1996) (analyzing section 18-6.5-103(4) — at-risk enhancement of robbery — and "find[ing] no indication that the General Assembly intended to require that a defendant act with knowledge of the age of a victim in order to be charged with a crime against an at-risk adult"); *cf. People v. Nardine*, 2016 COA 85, ¶ 32 ("[W]e conclude that a defendant need not know that the victim is 'at-risk' in order to be convicted of unlawful sexual contact on an at-risk juvenile."); *People v. Suazo*, 867 P.2d 161, 170 (Colo. App. 1993) ("The plain language of the assault on the elderly statute convinces us that the offense was meant to be a strict liability offense.").

¶ 35    At trial, the homeowner who was the victim of the enhanced theft testified that he was seventy-seven years old at the time of the crime. So he qualified as an at-risk person.  § 18-6.5-102(2), (4.5), C.R.S. 2018 (anyone over seventy is an at-risk person).  The homeowner also testified that he had come face-to-face with one of the intruders, K.K., as the intruder ran past him and out of the house.  But the prosecution did not present any evidence that B.D. interacted with, saw, or was seen by the homeowner.  Nor was there

any evidence presented that K.K. knew that the homeowner was an at-risk person or that he'd be present.

¶ 36    Still, because the evidence at trial showed that K.K. committed a portion of the crime in front of the at-risk person (even if K.K. didn't know that he did so), B.D. was convicted of theft from an at-risk person as a complicitor under the portion of the statute applying to offenses committed "in the presence of" an at-risk person.  § 18-6.5-103(5).

¶ 37    But, B.D. argues that, as a complicitor, he cannot be held strictly liable for the sentence enhancer when the record contains no evidence that he was aware that K.K. would commit the theft in the presence of an at-risk person.  We agree.

¶ 38    By statute, "[a] person is legally accountable as principal for the behavior of another constituting a criminal offense if, with the intent to promote or facilitate the commission of the offense, he or she aids, abets, advises, or encourages the other person in planning or committing the offense."  § 18-1-603, C.R.S. 2018.  Our supreme court has said that the statute applies to strict liability crimes so long as there is proof that the complicitor has (1) the intent to aid, abet, advise, or encourage the principal in his criminal act or

18

conduct; and (2) an awareness of those circumstances attending the act or conduct he seeks to further that are necessary for commission of the offense in question. *Childress*, ¶ 29. This is known as the "dual mental state requirement." *Id.* We agree with B.D. that there is no reason why the awareness prong of the "dual mental state requirement" wouldn't also apply to a sentence enhancer like the crimes against at-risk persons statute. *Cf. People v. McKinney*, 99 P.3d 1038, 1043 n.8 (Colo. 2004) ("It is also unclear, in light of *Blakely v. Washington,* [542] U.S. [296] . . ., whether the traditional sentence enhancer analysis retains vitality.").

¶ 39     A complicitor must be aware of the "circumstances attending the act or conduct he seeks to further that are necessary for commission of the offense in question." *Childress*, ¶ 29. "Circumstances attending the act or conduct" means the elements of the offense describing the prohibited act itself and the circumstances surrounding its commission. *Id.* That an at-risk person is present for an element or portion of the crime is a circumstance surrounding the commission of a theft that must be established before a court can impose an enhanced sentence under

the at-risk person statute. So, we conclude that there must be evidence that the complicitor had an awareness of that circumstance, even if such an awareness is not necessary to hold the principal accountable.

¶ 40 There is no evidence that B.D. had such an awareness. B.D. never encountered the victim, and there is no indication from the record that he was aware that they were robbing an elderly person. For example, the record does not indicate that K.K. and B.D. discussed robbing an at-risk person or even discussed the potential that the victim might be elderly. In the absence of any evidence establishing that B.D. was aware that the circumstances surrounding the crime could result in theft in the presence of an at-risk person, he is liable as a complicitor for theft as a class 2 misdemeanor and not theft from an at-risk person as a class 5 felony. Accordingly, the case must be remanded so that the mittimus can be amended and B.D. can be resentenced for misdemeanor theft. *See People v. Codding*, 191 Colo. 168, 169, 551 P.2d 192, 193 (1976) (where the evidence was insufficient to support a conviction of felony theft, but was sufficient to sustain a conviction of the lesser included offense of petty theft, defendant's

conviction of felony theft was reversed and remanded for resentencing).

¶ 41 The People contend that the "dual mental state requirement" does not apply to sentence enhancers because they are not elements of the crime. *See People v. Ramirez*, 997 P.2d 1200, 1208 (Colo. App. 1999) (holding that a strict liability sentencing enhancer related to the amount of drugs that a defendant possessed applied to a complicitor even though there was no evidence that she knew the amount of drugs the principal possessed), *aff'd by an equally divided court*, 43 P.3d 611 (Colo. 2001). But in *Childress*, decided sixteen years after *Ramirez*, the supreme court provided an expansive definition of the awareness prong of the "dual mental state requirement." A defendant must have the awareness not only of the "elements of the offense describing the prohibited act itself" but also the "the circumstances surrounding its commission." *Childress*, ¶ 29.

¶ 42 In *Childress*, a father was held responsible as a complicitor for the vehicular assault that his son committed while under the influence even though the father was only a passenger in the car. *Id.* at ¶ 4. The supreme court concluded that while the son could

21

be convicted of vehicular assault without any proof that he knowingly drove under the influence, there must be proof that the father knew that the son was driving while intoxicated. *Id.* at ¶ 38; *see* § 18-3-205(1)(b)(I), C.R.S. 2018. In other words, it was necessary to prove that the father was aware of something not contained within the elements of vehicular assault —that his son was under the influence.

¶ 43    Much like the knowledge that the son was intoxicated at issue in *Childress*, we conclude that the prosecution had to prove that B.D. was aware of the enhancing circumstances surrounding the commission of the crime — namely, that an element or portion of the offense would be committed in the presence of an at-risk person — before the court could impose an enhanced sentence. Simply put, we read *Childress* as requiring proof that B.D. was aware that the victim was an at-risk person or that an element or portion of the crime would be committed in the at-risk person's presence. And we are not persuaded that the fact that the at-risk person statute is a sentence enhancer and not an element of the offense is a distinction of consequence. *Cf. Lopez v. People*, 113 P.3d 713, 722 (Colo. 2005), *as modified on denial of reh'g* (June 27, 2005) (recognizing

that following *Blakely*, "[o]n the distinction between sentencing factors and elements of crimes, the [United States Supreme] Court impliedly rejected any remaining difference for the purposes of the jury trial requirement").

¶ 44    Accordingly, we reverse B.D.'s adjudication on the enhanced theft charge and remand for resentencing.

### III.    Conclusion

¶ 45    B.D.'s adjudication and sentence for theft from an at-risk person are reversed, and the case is remanded for resentencing on that count as a non-enhanced misdemeanor theft and to amend the mittimus accordingly.  The judgment is affirmed in all other respects.

JUDGE WEBB and JUDGE HARRIS concur.