Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's
homepage at http://www.courts.state.co.us. Opinions are also
posted on the Colorado Bar Association's homepage at
http://www.cobar.org.

ADVANCE SHEET HEADNOTE
March 8, 2021

## 2021 CO 16

**No. 20SA316, *People v. Peluso*—Criminal Law—Evidence—Searches and Seizures—Fourth Amendment.**

In this interlocutory appeal, the People challenge the trial court's order suppressing on Fourth Amendment grounds evidence of drugs discovered during parole officers' warrantless search of the defendant's residence. The supreme court holds that the officers reasonably believed the defendant's girlfriend, a parolee, had authority to consent to the search of the residence. Her apparent authority to consent was sufficient to validate the warrantless search. Accordingly, the supreme court reverses the suppression order and remands for further proceedings.

## The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2021 CO 16

**Supreme Court Case No. 20SA316**
*Interlocutory Appeal from the District Court*
El Paso County District Court Case No. 19CR1819
Honorable Marcus Henson, Judge

_____

**Plaintiff-Appellant:**

The People of the State of Colorado,

v.

**Defendant-Appellee:**

Aaron Peluso.

_____

**Order Reversed**
*en banc*
March 8, 2021

_____

**Attorneys for Plaintiff-Appellant:**
Daniel H. May, District Attorney, Fourth Judicial District
David Illingworth, Deputy District Attorney
Doyle Baker, Senior Deputy District Attorney
    *Colorado Springs, Colorado*

**Attorney for Defendant-Appellee:**
Earl W. Cook, Jr.
    *Colorado Springs, Colorado*

**JUSTICE HART** delivered the Opinion of the Court.

¶1     In this interlocutory appeal, we review the trial court's order suppressing evidence of drugs discovered during a warrantless search of Aaron Peluso's residence. Because the officers acted on a reasonable belief that Peluso's girlfriend had authority to consent to the search, we conclude that the trial court erred in suppressing the evidence. We therefore reverse the trial court's suppression order and remand for further proceedings.

## I. Facts and Procedural History

¶2     On March 23, 2019, several parole officers approached a home that they believed was the residence of Susan Damico. Damico was a parolee whose parole agreement allowed officers to search "her person, residence, and/or vehicle" without a warrant as a condition of parole. About a month before the search, Damico informed her parole officer, Brook Hathaway, that she would be moving from the apartment she lived in at that time. On March 9, 2019, Damico updated C-WISE, a call center and database used to monitor and communicate with parolees, to indicate that her new residence was Peluso's home.

¶3     When the officers arrived at the home, they found Damico in the front yard getting into her car. The officers identified themselves, informed Damico that they were conducting a parole visit, obtained a house key from her, and asked whether there was anyone inside the home. Damico told the officers that Peluso was inside in bed. While the other officers entered the home, Hathaway remained outside

2

with Damico for several minutes. Damico did not say at any point during her interactions with the officers that the home they were searching was not her legal residence.

¶4     The officers who first entered the home found Peluso in bed and informed him of the purpose of their visit. After Peluso got dressed and out of bed, officers searched the room and found methamphetamine, THC, glass pipes, rolling papers, and a digital scale. Officers arrested Peluso and then searched his wallet, which contained additional methamphetamine. During the drive to the El Paso County Jail, Peluso told officers that he had been using methamphetamine.

¶5     Peluso was subsequently charged with possession of a controlled substance and possession of drug paraphernalia. He filed a motion to suppress both the evidence recovered from his home and the statements he made after his arrest, arguing that the warrantless search of his home violated his Fourth Amendment rights.

¶6     At the suppression hearing, Hathaway explained that he believed Damico was a co-habitant of Peluso's home and that officers therefore had authority to search the home pursuant to Damico's parole agreement for three reasons. First, he had met Peluso with Damico and knew they were romantically involved. Second, Damico had told him that she was moving and had updated her address

3

on C-WISE. Finally, Damico gave no indication at the time of the search that she was not living at the home.

¶7 Damico testified at the hearing that she did not formally move into Peluso's residence until the end of April—several weeks after the search. She acknowledged, however, that she stayed with Peluso from time to time (including the day of the search), had a key to the residence, and kept some of her belongings there.

¶8 The trial court issued an oral ruling granting the motion to suppress, concluding that Damico did not actually live at Peluso's home at the time of the search and that Hathaway could have done more to verify her address, rather than accepting her update in C-WISE as dispositive. The court further found that there was insufficient evidence to determine whether Peluso might have objected to the search once the officers entered his home. The People moved for reconsideration, arguing that the court incorrectly analyzed Damico's actual, not apparent, authority to consent to the search. The trial court denied the People's motion, and the People filed this interlocutory appeal pursuant to C.A.R. 4.1.

## II. Analysis

¶9 In their interlocutory appeal, the People ask that we reverse the trial court's suppression of the drugs, paraphernalia, and incriminating statements. They argue that the officers reasonably believed that Peluso's home was Damico's new

4

residence, and therefore she had apparent authority to allow the search. Further, they note that there is no evidence that Peluso objected to the search and that, in any event, once the search had lawfully commenced, his objection could not render it unlawful. We agree and reverse the trial court's suppression order.

## A. Standard of Review

¶10 Review of a trial court's suppression order presents "a mixed question of law and fact." *People v. Allen*, 2019 CO 88, ¶ 13, 450 P.3d 724, 728 (quoting *People v. Threlkel*, 2019 CO 18, ¶ 15, 438 P.3d 722, 727). We defer to the trial court's findings of fact "if they are supported by competent evidence in the record." *Id.* However, we review the trial court's legal conclusions de novo. *Id.*

## B. Law

¶11 The Fourth Amendment prohibits unreasonable searches and seizures. U.S. Const. amend. IV. Although a warrant is generally required to search a home, "certain categories of permissible warrantless searches have long been recognized." *Fernandez v. California*, 571 U.S. 292, 298 (2014).

¶12 One such category is the search of a parolee. *Samson v. California*, 547 U.S. 843, 846 (2006); *People v. McCullough*, 6 P.3d 774, 779 (Colo. 2000). "Conditional release on parole operates as an extension of a person's confinement intended to facilitate reintegration with society, as opposed to an unconditional release accompanied by full restoration of the person's civil rights." *In re Miranda*,

2012 CO 69, ¶ 13, 289 P.3d 957, 961. As such, Colorado law allows for the unannounced, warrantless search of a parolee's "person, residence, or vehicle." § 17-2-201(5)(f)(I)(D), C.R.S. (2020).

¶13 Consent searches are also constitutionally permissible without a warrant. *Fernandez*, 571 U.S. at 298. Where a residence is jointly occupied by more than one person, the consent of one occupant with common authority over the premises is sufficient to permit a warrantless search. *United States v. Matlock,* 415 U.S. 164, 171 (1974). Cohabitants are considered to have common authority where there is "mutual use of the property by persons generally having joint access or control for most purposes." *Id.* at 171 n.7.

¶14 A warrantless search is also valid based upon the consent of a third party whom officers, at the time of the entry, reasonably believe to possess common authority over the premises, even if the person in fact does not. *Illinois v. Rodriguez*, 497 U.S. 177, 179, 186 (1990). "An apparent authority analysis begins by conceding that the consent obtained by police is legally invalid because the consenting third party lacks sufficient authority over the property to consent to a search." *Petersen v. People,* 939 P.2d 824, 830 (Colo. 1997). Searches under this doctrine are nonetheless valid where officers acting in good faith make reasonable mistakes of fact. *Id.* at 830–31. The test for reasonableness is an objective one: "the facts available to the officer at the moment" must be such that a person "'of reasonable

caution' . . . [would believe] that the consenting party had authority over the premises[.]" *Rodriguez*, 497 U.S. at 188 (quoting *Terry v. Ohio,* 392 U.S. 1, 21–22 (1968)). If officers reasonably believe that a third party has common authority over a residence, that third party's apparent authority suffices to validate a warrantless search. *Williams v. People*, 2019 CO 108, ¶ 21, 455 P.3d 347, 351 (citing *Rodriguez*, 497 U.S. at 183–84, 189).

¶15 Although consent by one resident of a jointly occupied premises is generally sufficient to justify a warrantless search, a narrow exception exists where a physically present inhabitant expressly refuses consent to the police search—that express refusal is "dispositive as to him, regardless of the consent of a fellow occupant." *Georgia v. Randolph,* 547 U.S. 103, 122–23 (2006). However, this exception applies only if the objecting occupant is both physically present and objects at the time the consenting occupant authorizes the search. *Williams*, ¶ 35, 455 P.3d at 354 (citing *Fernandez*, 571 U.S. at 306).

## C. Application

¶16 The parties do not dispute that Damico's parole agreement gave her parole officer permission to search her residence. Nor do they dispute that Damico was not actually living at Peluso's home at the time of the search. The central disputed question is whether the parole officers reasonably believed that Damico was living

in the home such that they could conduct a search pursuant to the terms of her parole agreement.

¶17 The trial court concluded that there was insufficient evidence that parole officers reasonably believed Damico had authority to consent to a search of Peluso's residence. We disagree. The undisputed facts available to parole officers at the moment they arrived at Peluso's residence warranted their belief that Damico possessed common authority over the premises, such that her apparent authority sufficed to validate the warrantless search.

¶18 On March 23, 2019, when officers encountered Damico in front of Peluso's residence, they knew the following undisputed facts:

- Damico was a parolee subject to warrantless searches of her residence;

- Damico and Peluso were in a romantic relationship;

- during a search of her apartment on February 19, 2019, Damico informed her parole officer of an impending move;

- on March 9, 2019, Damico updated her address to Peluso's address on C-WISE;

- Damico was in possession of a key to the residence; and

- Damico neither objected to the search nor clarified that she did not yet live with Peluso.

On these facts, the officers reasonably believed that Damico resided with Peluso at the time of the search. This reasonable belief was further confirmed when, in response to an officer's question about whether there were others inside the house,

Damico responded that Peluso was in bed, indicating her use of and access to the property.

¶19 The trial court's suppression order also rested on what the court described as a lack of evidence as to whether Peluso might have objected to the search. But the trial court's focus on Peluso's hypothetical objection was inappropriate for two reasons. First, Peluso has not argued, either at the hearing or here, that he objected to the search. Rather, Peluso argues that he was not given the opportunity to object. But once the officers reasonably believed they were searching Damico's residence pursuant to the terms of her parole agreement, there was no reason to give Peluso an opportunity to object. Second, even if Peluso had objected to the search at the time officers entered his bedroom, it would have been too late to vitiate Damico's previously given consent. *See Williams*, ¶ 3, 455 P.3d at 348. Because Peluso was asleep in his bedroom and concedes that the search had already commenced when officers first made contact with him, he "los[t] out" on the opportunity to make an effective objection. *Randolph*, 547 U.S. at 121; *see also Williams*, ¶ 42, 455 P.3d at 355.

### III. Conclusion

¶20 Because parole officers reasonably believed Damico had authority to consent to a search of Peluso's residence, her apparent authority was sufficient to validate the warrantless search, and Peluso's motion to suppress should have been

denied.  Accordingly, we reverse the trial court's suppression order and remand for further proceedings consistent with this opinion.