23CA1224 Peo v Vann 12-04-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA1224
Adams County District Court No. 22CR488
Honorable Kyle Seedorf, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Skaia Lauren Marie Vann,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE JOHNSON
Harris and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 4, 2025

---

Philip J. Weiser, Attorney General, Grant R. Fevurly, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Barbara A. Snow, Alternate Defense Counsel, Longmont, Colorado, for Defendant-Appellant

¶ 1    Defendant, Skaia Lauren Marie Vann (Vann), appeals her judgment of conviction for assault in the second degree and child abuse, both of which the jury found constituted acts of domestic violence. Vann alleges that, because her apartment was unlawfully searched and she was arrested without a warrant, the court erred by denying her motion to suppress evidence and statements made stemming from the arrest. Specifically, she contends that (1) the victim did not have actual or apparent authority to consent to a search of Vann's apartment and (2) the officers unlawfully seized her. We disagree with her contentions and, therefore, affirm.

## I.    Background

¶ 2    The victim, C.R., and Vann had been in a two-year relationship and shared an apartment in Thornton. One afternoon, C.R. called law enforcement to report that she and her one-year-old daughter had been assaulted by Vann. Police responded to a complex where they found C.R. and her daughter outside of an apartment unit. C.R. exhibited physical symptoms consistent with strangulation, and her daughter had a head contusion. C.R. and her daughter were then taken to the hospital.

¶ 3     At the suppression hearing, officers testified that C.R. told them that Vann may still be in the apartment unit, but that she was uncertain because she and her daughter had fled.  Officers further testified that C.R. told them she lived in the apartment and paid rent.  Based on this information, C.R. signed a form consenting to the police searching the residence.

¶ 4     While waiting for C.R.'s written consent, some of the officers still at the apartment building knocked loudly on Vann's door and announced their presence repeatedly — staying outside for forty-five minutes to an hour.  One of the officers testified that he did not know if Vann was inside.

¶ 5     Once the officers had C.R.'s written consent, the officers obtained a key from the property management office because C.R. did not have a key in her possession.  The officers entered the apartment and saw Vann exiting from a back bedroom; they subsequently arrested her and took photographs of the apartment and Vann.

¶ 6     Vann moved to suppress evidence acquired at the apartment and statements made during her arrest. Following a suppression hearing, the district court denied the motion, determining that C.R.

had authority to consent to the search of Vann's apartment and that the police had probable cause to arrest Vann once inside her apartment.

¶ 7    After a jury trial, Vann was convicted of second degree assault and child abuse.  The court sentenced Vann to three years of probation, sixty days of in-home detention, and various other terms and conditions.

## II.    Standard of Review

¶ 8    Review of a district court's order on a motion to suppress involves a mixed question of law and fact.  *See People v. Cline*, 2019 CO 33, ¶ 13.  Factual findings are reviewed for clear error and will not be disturbed on review "so long as 'they are supported by competent evidence in the record.'"  *Id.* (quoting *People v. Threlkel*, 2019 CO 18, ¶ 15).  The district court's legal conclusions are reviewed de novo.  *Id.*

## III.    Warrantless Search

¶ 9    Vann contends that the court erred by finding that C.R. had authority to consent to the search.  We disagree.

## A. Applicable Law

¶ 10  The Fourth Amendment to the United States Constitution and article II, section 7, of the Colorado Constitution prohibit unreasonable searches and seizures. "Although a warrant is generally required to search a home, 'certain categories of permissible warrantless searches have long been recognized.'" *People v. Peluso*, 2021 CO 16, ¶ 11 (quoting *Fernandez v. California*, 571 U.S. 292, 298 (2014)).

¶ 11  One such category of a constitutionally permissible warrantless search is when law enforcement obtains consent. *See United States v. Matlock*, 415 U.S. 164, 170-71 (1974). Cohabitants are considered to have actual authority to consent to a search where there is "mutual use of the property by persons generally having joint access or control for most purposes." *Id.* at 172 n.7.

¶ 12  But officers may also obtain consent from a third party who has apparent authority, someone "whom officers, at the time of the entry, reasonably believe to possess common authority over the premises, even if the person in fact does not." *Peluso*, ¶ 14. The facts "available to the officer at the moment" must be such that a person "of reasonable caution" would believe that "the consenting

4

party had authority over the premises." *Id.* (quoting *Illinois v. Rodriguez*, 497 U.S. 177, 188 (1990)). But if officers find themselves presented with ambiguous circumstances "regarding the authority of the third party to consent to the search," they should "make reasonable inquiries." *People v. McKinstrey*, 852 P.2d 467, 473 (Colo. 1993).

## B. Analysis

¶ 13 Vann contends that C.R. did not possess actual or apparent authority to consent to a search. It is not entirely clear from the court's order whether it determined that C.R. had actual authority or only apparent authority. Regardless, because we conclude that the record supports a finding that C.R. had apparent authority, we likewise conclude that the court properly denied the motion to suppress. *See People v. Dyer*, 2019 COA 161 ¶ 39 (an appellate court "may affirm a lower court's decision on any ground supported by the record"); *Peluso*, ¶ 20 ("Because parole officers reasonably believed [a third party] had authority to consent to a search of [the defendant's] residence, [the third party's] apparent authority was sufficient to validate the warrantless search . . . .").

¶ 14    The district court determined that law enforcement had authority to enter Vann's apartment without a warrant because C.R. provided officers with information that "was reasonable . . . [to] lead law enforcement to believe . . . [C.R.'s] authority rest[ed] on mutual use of the property" and C.R. consented to the officers entering the apartment.  The district court's findings and legal conclusion are supported by the record from the suppression hearing.

¶ 15    Specifically, law enforcement found C.R. and her daughter near the residence with visible injuries, and at least one officer testified that C.R.'s injuries appeared to have "occurred recently." Officers testified that C.R. told them that she and Vann had been in a relationship for two years, she and her daughter lived in Vann's apartment, and she helped to pay rent for the unit.  One officer testified that C.R. "made it sound like [C.R.] just paid the rent recently as well."

¶ 16    C.R. told officers that her name was not on the apartment's lease and that she did not have a key to the unit but explained that her key may have been thrown while fleeing.  Officers testified that C.R. did not ask questions while they advised her about the consent

form before she signed it. And based on this consent, the officers went to the property management office for the apartment complex, where an employee of the management company provided a key after being informed about the form. Thus, based on the officers' knowledge at the time C.R. gave consent, we agree with the district court that it was reasonable for law enforcement to believe that C.R. had authority to consent to a search of the apartment.

¶ 17 Nonetheless, Vann argues that these facts presented officers with an ambiguous situation, thus requiring the officers to conduct further inquiry. Specifically, Vann points to the police meeting C.R. at a different apartment, C.R. not having a key, and the officers needing to obtain a key from the management office.

¶ 18 As to an officer meeting C.R. at a different apartment, an officer testified that dispatch told him to go to Vann's apartment but was then told by dispatch that C.R. had fled to a different unit. This testimony does not reflect that C.R. was confused or uncertain about where she lived; it just shows she went to a different apartment after the reported assault.

¶ 19 Regarding C.R.'s lack of a key, officers testified that C.R. volunteered the information that she did not have one, but she

provided an explanation. And although the officers searched outside and did not find a key, without more, this does not necessarily create an ambiguous situation, as there may be many reasons, besides not being an authorized occupant of a home, as to why a person may not have a key. *See, e.g., United States v. Gillis*, 358 F.3d 386, 390-91 (6th Cir. 2004) (finding apparent authority where the victim who consented to the search had no keys to the apartment but made statements to the police that she lived there and had been in the place earlier that morning); *Iron Wing v. United States*, 34 F.3d 662, 665 (8th Cir. 1994) (rejecting a defendant's argument that the victim did not have apparent authority because she lacked a key and climbed through a bedroom window to let in officers).

¶ 20     Vann also relies on *Rodriguez*, 497 U.S. at 177, to contrast the facts of this case and suggest that apparent authority existed in that case only because the victim had a key to the residence. Besides the victim not having a key in this case, *Rodriguez* is similar in its facts, as the victim in that case referred to the residence as "our" apartment and said her belongings were inside. *Id.* at 179. But factual issues aside, *Rodriguez* only recognized the

doctrine of apparent authority and did not decide whether such authority existed based on the facts in the case; instead, it remanded the matter for a determination by the lower court. *Id.* at 189.

¶ 21    *Rodriguez* also does not help Vann because the Supreme Court said that warrantless entry based upon apparent authority is not automatically lawful and rests on whether "the surrounding circumstances could conceivably be such that a reasonable person would doubt its truth and not act upon it without further inquiry." *Id.* at 188. C.R. did not try to hide the fact that she did not have a key in her possession, nor did she hide that her name would not be found on the lease. The "surrounding circumstances" — that she fled, that she said she lived in the apartment with Vann and her daughter, and that she paid rent — all went to the district court's reasoning that objectively, based on these facts, the police officers had no reason to doubt C.R.'s veracity and thus no further inquiry was necessary. *See United States v. Penney*, 576 F.3d 297, 308 (6th Cir. 2009) (recognizing that in the modern era, it is not unreasonable for police to not conduct further investigation as to whether someone's name is on a lease, "as it is a reality in today's

world that consenting adults often co-habitat [sic] together without benefit of legal formalities — including those formalities relating to the establishment of property interests").

¶ 22     Finally, we reject the argument that because the police obtained the key from the management office, C.R. lacked apparent authority, or at the very least, put the police on notice it should make further inquiry.  Absent any evidence in the record that the management office, for example, questioned C.R.'s written consent because C.R.'s name was not on the lease or that it did not know that C.R. was an occupant of the apartment, we cannot say that this alone created an ambiguous situation warranting further police inquiry.

¶ 23     Therefore, we conclude that the district court did not err by holding that the warrantless search was reasonable because the police had consent from C.R.

IV.   Warrantless Seizure

¶ 24     Next, Vann contends that she was unlawfully seized without an arrest warrant.  We disagree.

## A. Applicable Law

¶ 25    A warrantless arrest is "only valid if supported by probable cause." *People v. Castaneda*, 249 P.3d 1119, 1122 (Colo. 2011). Probable cause exists when "the objective facts and circumstances available to a reasonably cautious officer at the time of arrest justify the belief that (1) an offense has been or is being committed (2) by the person arrested." *Id.* (quoting *People v. Robinson*, 226 P.3d 1145, 1149 (Colo. App. 2009)).

¶ 26    Law enforcement is prohibited "from making a warrantless *and* nonconsensual entry into a suspect's home in order to make a routine felony arrest." *Payton v. New York*, 445 U.S. 573, 576 (1980) (emphasis added). Stated differently, probable cause does not permit warrantless entry into a suspect's home "to effect a warrantless arrest absent consent or exigent circumstances." *People v. Prescott*, 205 P.3d 416, 421 (Colo. App. 2008).

## B. Analysis

¶ 27    Vann argues that (1) the record does not support a finding that officers lacked knowledge of Vann's presence in the apartment, so they obtained C.R.'s consent in a fraudulent manner; and (2) the

district court misapprehended the law on warrantless arrests. We address, and reject, each contention in turn.

¶ 28     First, Vann contends that the police knew she was in the apartment and so secured C.R.'s consent on a fraudulent basis, as the police did not want to search the apartment, but simply sought to gain access to the residence to arrest her. Even if the police had mixed motives, the record supports the district court's finding that "law enforcement officers did not know that [Vann] was [present in the apartment]" because "there was nothing that was testified to that would give a reasonable officer information to conclude that [Vann] was in the apartment." Specifically, the record supports that there was no response from inside the unit when officers knocked loudly and announced themselves, no lights were turned on or off, and officers did not hear voices from inside the unit. The district court credited the officers' testimony that they were unsure if Vann was inside the residence, and as the finder of fact, it was for the district court, not us, to make credibility determinations and weigh the evidence. *See In re Estate of Romero*, 126 P.3d 228, 231 (Colo. App. 2005). Because this factual finding was supported by

competent evidence in the record, we cannot disturb it on appeal. *See Cline*, ¶ 13.

¶ 29 Second, the district court correctly applied the legal standards on warrantless arrests. It held that, because law enforcement had consent to enter Vann's apartment and "already had probable cause to arrest," the warrantless arrest was lawful. This was a correct application of the law, as police who enter a suspect's home with consent may make a warrantless arrest based on probable cause. *See Payton*, 445 U.S. at 576 (the police may not engage in a "warrantless *and nonconsensual* entry into a suspect's home in order to make a routine felony arrest" (emphasis added)).

¶ 30 Vann argues that because C.R. did not have authority to consent — a contention we have already rejected —the police could only enter the premises to effectuate a warrantless arrest under exigent circumstances. This contention fails because police only needed consent *or* exigent circumstances to enter the apartment if they had probable cause to arrest Vann. *Prescott*, 205 P.3d at 421 (finding that the police could not enter a hotel room "to effect a warrantless arrest absent consent *or* exigent circumstances"

13

(emphasis added)).  Because the police had consent to enter the apartment, no exigent circumstances were required.

¶ 31    And because Vann does not contest the district court's determination that police had probable cause to arrest Vann once they entered the apartment with C.R.'s consent, Vann's arrest satisfies the exception to the prohibition on in-home warrantless arrests.

## V.    Conclusion

¶ 32    We affirm the judgment of conviction.

JUDGE HARRIS and JUDGE SCHOCK concur.